**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,**

v.

**ALLEN GREEN & ASSOCIATES, INC., Defendant-Appellant.**

No. 17320.

United States Court of Appeals
Sixth Circuit.

June 12, 1967.

W. Dane Clay, Little Rock, Ark., for appellant.

Jeter S. Ray, Regional Atty., Nashville, Tenn., for appellee, Charles Donahue, Solicitor of Labor, Bessie Margolin, Associate Solicitor, Robert E. Nable, Allen

H. Sachsel, Attys., U. S. Dept. of Labor, Washington, D. C., on brief.

Before WEICK, Chief Judge, PECK, Circuit Judge, and CECIL, Senior Circuit Judge.

WEICK, Chief Judge.

The sole question in this case is whether Appellant's employees on two of its construction projects were covered under the 1961 Amendments to the Fair Labor Standards Act.[1] These amendments extended coverage to all employees employed in "an enterprise engaged in commerce or in the production of goods for commerce." The definition of "enterprise" is contained in Section 3(s) (4) of the Act, which provides:

> "3(s) 'Enterprise engaged in commerce or in the production of goods for commerce' means any of the following in the activities of which employees are so engaged; including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person: * * *
>
> "(4) any such enterprise which is engaged in the business of construction or reconstruction, or both, if the annual gross volume from the business of such enterprise is not less than $350,000; * * * *"

Appellant admitted that it is an enterprise engaged in the construction business, but denied that it had any "annual gross volume of business" from its construction activities in the years 1964 and 1965, and contended that its employees were not covered.

In 1964 it constructed a 100-unit motel in Tucumcari, New Mexico, valued at $1,000,000, which it is operating under franchise agreement with Holiday Inns of America. In 1965 it constructed a 152-unit apartment complex valued at $1,000,000, named Chateau DeVille Apartments, in Little Rock, Arkansas. It holds the apartment complex for rental purposes.

The cost of labor and materials exceeded $350,000 for each project. The materials, including equipment and supplies, were purchased from sources both within and without the states where the projects were located. Part of the work was handled by subcontractors. Some of its employees were covered by other provisions of the Act and are not involved here.

It was the contention of Appellant that the words "gross volume from the business" in Section 3(s) (4) of the Act mean gross volume of sales, income or payments received from the construction business and do not comprehend a situation where a construction contractor builds a structure for himself.

The District Judge adopted findings of fact and conclusions of law and held that the Act embraced any enterprise engaged in the construction business, whether constructing for itself or for others, so long as the annual gross value received from its business was not less than $350,000. The District Judge further held that in determining whether the enterprise has an annual gross volume from its business of not less than $350,000, any gain of capital assets derived from its construction activities must be counted to the extent of their fair market value, irrespective of whether the assets were in the form of money or its equivalent in property. We agree with this holding.

It would seem to us anomalous for Congress to cover employees of construction contractors who build for others, and not cover employees of contractors who build for themselves, particularly since about 23% of all contractors build for themselves. In either instance, the employees performed the same kind of work. There is no valid reason to discriminate between the two types of employees.

The underlying concern of the Act is the impact of the particular activity upon interstate commerce. From this perspective the ultimate disposition

1. 29 U.S.C. § 201 et seq.

of the construction has little relevance. The important consideration is whether the activity which went into the actual building process is likely to have an effect on the flow of men, money, and materials across state lines. In this case Congress has exercised the legislative judgment that any activity which creates a business volume of $350,000 or more is likely to have a substantial impact on the channels of the national economic system. The fact that the contractor does not sell the building after its completion does not mean that in constructing it for his own purposes he did not set in motion substantial interstate commercial activities or avail himself of the facilities of other interstate enterprises. Indeed, the facts of this case, involving activities in a number of states, illustrate the soundness of congressional judgment that construction of this magnitude generates an important tributary to the stream of commerce.

The legislative history of Section 3(s)(4) indicates that the Senate deliberately refrained from using the word "sales" in the Amendment. 2 U.S.Code Congressional & Administrative News, 1961, p. 1651.

Appellant argued that if Congress intended to include employees of construction contractors who build for themselves, apt language could have been used to express the intent, such as, "If the annual value of construction by such enterprise is not less than $350,000," and that the use of the words "annual gross volume from the business" is an awkward

way to describe the level of business activity.

■■ An examination of the many cases dealing with statutory construction reveals that legislatures do not always use apt words to express their intent. The Court will look to the legislative purpose of the Act and follow that purpose even though a literal reading of the language used would suggest a different conclusion. Perry v. Commerce Loan Co., 383 U.S. 392, 399, 400, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966); United States v. American Trucking Ass'n, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). Here a literal reading of the Act does not suggest that we adopt Appellant's construction. The words "annual gross volume from the business" convey a broad meaning and should not be narrowly construed.

In adopting a liberal construction of the Act, the Supreme Court in Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed.2d 243, said:

"However, within the tests of coverage fashioned by Congress, the Act has been construed liberally to apply to the furthest reaches consistent with congressional direction."

See also Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 429, 75 S.Ct. 860, 99 L.Ed. 1196 (1955).

■ We conclude that the congressional purpose was to include in the coverage of the Act employees of construction contractors who build for themselves as well as those who build for others.[2]

Affirmed.

---

2. The Act was again amended in 1966 to dispense with the "annual gross volume" test and now all employees of any such enterprise which has at least some employees engaged in commerce or in the production of goods for commerce, are covered (80 Stat. 832). The test now reads "annual gross volume of sales made or business done". The Senate report indicates that the words "business done" were used to make "the intent abundantly plain for the future and remove any possible reason for misapprehension." Senate Report No. 1487, 89th Cong., 2d Sess., p. 7, U.S. Code Cong. & Admin.News 1966, p. 3009.