**Raymond J. DONOVAN \*, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,**

v.

**S & L DEVELOPMENT CO., a Partnership, and Charles Langdon and Don G. Simpson, Individually and as Partners, Defendants-Appellees.**

No. 79–4563.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 1981.

Decided June 1, 1981.

* We substitute the name Raymond J. Donovan, Secretary of Labor, as the successor to the original appellant, Ray Marshall, the former Secretary of the United States Department of Labor, per Fed.R.App.P. 43.

Carin A. Clauss, Washington, D. C., for plaintiff-appellant.

Rex R. Mull, Bakerfield, Cal., for defendants-appellees.

Before CHOY and ALARCON, Circuit Judges, and HEMPHILL **, District Judge.

ALARCON, Circuit Judge:

The Secretary of Labor appeals from the district court's decision that construction workers employed by the defendants-appellees are not entitled to the protection of the Fair Labor Standards Act of 1938, as amended.[1] The district court concluded that defendants were not "engaged in the business of construction or reconstruction" as set forth in § 3(s)(4) of the Act,[2] because

---

** The Honorable Robert W. Hemphill, Senior United States District Judge for the District of South Carolina, sitting by designation.

1. 29 U.S.C. § 201 et seq. (hereinafter "the Act").

2. 29 U.S.C. § 203(s)(4).

the construction work completed by defendants' employees was of a limited duration. We disagree.

S & L Development Company is a partnership owned by Don G. Simpson and Charles Langdon, individually and as partners (hereinafter collectively "S & L"). The sole asset of the partnership is a commercial office building located in San Diego. In 1974, S & L leased the office building to the County of San Diego. Pursuant to that lease, S & L was required to remodel the building to suit the new tenants. From October 1974 through January 1975, S & L employed at least five full-time construction workers. During the three and a half month period, construction workers completed the remodeling project, which involved lowering the ceiling and replacing the light fixtures, moving walls, relocating telephone and electrical outlets, and constructing a small enclosure outside the building. These employees were paid straight hourly rates whether or not they worked in excess of forty hours per week.

The Secretary of Labor brought this action under § 17 of the Fair Labor Standards Act, to enjoin S & L from violating the Act's overtime and record keeping provisions and to recover unpaid overtime compensation claimed to be due under § 7 of the Act.[3] The Secretary asserted that the construction workers employed by S & L were protected under the Act because S & L was a covered enterprise[4] for the period of time that it engaged in the remodeling project. Following a brief trial, a magistrate found that the S & L employees were not protected by the provisions of the Act because S & L was not "engaged in the business of construction or reconstruction" within the meaning of the Act. Adopting the magistrate's findings of fact and conclusions of law, the district court entered judgment for defendants. The Secretary of Labor appeals from that judgment. For the reasons stated below, we reverse.

■ The sole question on appeal is whether the district court was correct in finding that S & L was not "engaged in the business of construction or reconstruction" as set forth in § 3(s)(4) of the Act. S & L maintains that it is not an enterprise subject to coverage under the Act, and urges us to adopt a narrow construction of the phrase "engaged in the business of construction or reconstruction." First, S & L contends that by using the words "the business of," Congress intended to cover only construction contractors. Second, S & L argues that even if Congress intended to cover the incidental construction activities of an enterprise, those construction activities must be substantial and continuing in order to subject the enterprise to coverage under the Act. We disagree with this nar-

---

**3.** An enterprise covered by the Act must pay its employees at a time and a half rate for all hours worked in excess of forty per week. 29 U.S.C. § 207. During the period that S & L was engaged in the remodeling project, it is alleged that some of the construction employees worked more than forty hours per week. On remand, the actual hours worked must be determined.

**4.** The concept of "enterprise coverage" was added to the Fair Labor Standards Act by the 1961 Amendments to extend protection to all employees of an enterprise that meets the requirements of the Act. 29 U.S.C. §§ 203(r) & (s). Prior to that time, "traditional coverage" under the Act was based on an employee-by-employee determination of whether the individ-·ual worker was "engaged in commerce" or "in the production of goods for commerce." 29 U.S.C. §§ 206, 207. To extend coverage to all employees of an enterprise, the Secretary of Labor must prove that the business is an enter-

prise as defined in § 3(r) and that it has the necessary contacts with commerce as set forth in § 3(s) of the Act. This commerce requirement is satisfied if the enterprise has: (1) employees (more than one) either traditionally covered *or* employees "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce," *and* (2) an annual gross volume not less than $250,000 *or* be engaged in certain specified enterprises including "the business of construction or reconstruction." *See generally* Player, *Enterprise Coverage Under the Fair Labor Standards Act: An Assessment of the First Generation,* 28 Vand.L.Rev. 283 (1975); Willis, *The Evolution of the Fair Labor Standards Act,* 26 U.Miami L.Rev. 607 (1972).

In deciding that S & L is "engaged in the business of construction or reconstruction," we do not decide whether the other elements of enterprise coverage have been met.

row interpretation of the statutory language.[5]

In our view, Congress intended to cover full-time construction workers for short-term projects whether they are employed by contractors or by other enterprises which engage in construction work.[6] The construction workers employed by S & L did the same kind of work that they would have done had they been employed by an independent contractor. We find "no valid reason to discriminate between the two types of employees." *Wirtz v. Allen Green & Associates, Inc.*, 379 F.2d 198, 199 (6th Cir. 1967) (finding of coverage based on the fact that the construction employees performed "the same kind of work"). *See also Brennan v. Six Flags Over Georgia, Ltd.*, 474 F.2d 18, 19 (5th Cir.), *cert. denied*, 414 U.S. 827, 94 S.Ct. 47, 38 L.Ed.2d 61 (1973) ("It is the character of the work, not the source of the remuneration, that controls.").

Our conclusion is supported by considering the purposes of the Fair Labor Standards Act.[7] Equally important to the protection offered employees by the Act is the "protection to employers who pay a decent wage and who must compete with employers who pay a substandard wage." S.Rep.No.145, 87th Cong., 1st Sess., *reprinted in* [1961] U.S.Code Cong. & Ad. News 1620, 1621 (quoting Senator John F. Kennedy when he presented this legislation). *See also Wirtz v. Malthor, Inc.*, 391 F.2d 1, 3 (9th Cir. 1968). Short-term employers of full-time construction workers should not be in a better economic position than independent construction contractors performing projects of a short duration who must comply with the requirements of the Fair Labor Standards Act.

Coverage for enterprises "engaged in the business of construction or reconstruction" is not limited to construction contractors. Other courts, interpreting § 3(s)(4), have not required that a covered enterprise be engaged exclusively or even primarily in the construction business.[8] Coverage is extended to enterprises that "build for themselves as well as those who build for others." *Wirtz v. Allen Green & Associates, Inc., supra*, 379 F.2d at 200.

The district court found that S & L was not "in the business of construction or reconstruction" within the meaning of the Act, because its construction activities were of a limited duration. This rationale, however, adds a requirement of substantiality to § 3(s)(4) which Congress specifically removed when it eliminated any dollar volume requirement for construction activi-

---

5. It is well established that the Act's coverage provisions are to be construed broadly to apply to the "furthest reaches consistent with congressional direction." *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed.2d 243, 247 (1959). *See Shultz v. W. R. Hartin & Son, Inc.*, 428 F.2d 186, 189 (4th Cir. 1970); *Shultz v. Mack Farland & Sons Roofing Co.*, 413 F.2d 1296, 1300 (5th Cir. 1969); *Wirtz v. Allen Green & Assocs., Inc., supra*, 379 F.2d at 200.

6. S & L contends that such a decision would extend the Act's coverage to the homeowner who employs a carpenter and a laborer for a short period of time to remodel his house. It would not. We do not find the words "the business of" to be mere surplusage. Because business is not defined by the Act, the word must be given its ordinary meaning. Webster's New Collegiate Dictionary (1979) defines business as "a commercial ... enterprise." As such, the use of the word limits coverage to anyone who engages in construction or reconstruction for business purposes.

7. 29 U.S.C. § 202(a)(3).

8. *Hodgson v. Colonnades, Inc.*, 472 F.2d 42, 48–49 (5th Cir. 1973) (corporation whose principal business was the operation of a group of hotels was in the business of construction when it did substantial remodeling of its hotels using its own employees); *Brennan v. Whatley*, 432 F.Supp. 465, 468 (E.D.Tex.1977) (real estate development company was in the business of construction when its employees built roads, beach facility, golf course, and tennis courts, despite argument that construction activities were merely incidental to its primary business). *See also Brennan v. Six Flags Over Georgia, Ltd., supra*, 474 F.2d at 19 (amusement park, whose principal business was exempt during the season, was required to pay statutory wages to maintenance employees who did a small amount of new construction work).

**18**

ties.[9] The critical consideration for coverage under § 3(s)(4) is "whether the activity that went into the actual building process is likely to have an effect on the flow of men, money, and materials across state lines." *Wirtz v. Allen Green & Associates, Inc.,* supra, 379 F.2d at 200. The removal of the dollar volume requirement in 1966 indicates a legislative intent that any construction work, regardless the size or duration of the project, is likely to have an effect on interstate commerce.[10] Thus, the duration of the project is relevant only to determine the period of coverage; the element of coverage is already established here by the nature of the work.

■ Finally, S & L argues that it is exempt from coverage under the exclusion for a family business with no regular employees outside the family as set forth in § 3(s).[11] This conclusion is devoid of any factual support in the record. In fact, the evidence shows that the two partners are *unrelated* and hired full-time employees for a limited period of time to complete a construction project.

We reverse and remand for proceedings not inconsistent with this opinion.

---

9. The 1961 amendments to the Act provided coverage for a construction enterprise with an annual gross volume not less than $350,000. Pub. L. No. 87–30, § 2(c), 75 Stat. 65. This dollar limit was totally removed in the 1966 amendments. Pub. L. No. 89–601, § 102(c), 80 Stat. 830.

10. It should be noted that a business desiring to avoid enterprise coverage based on construction activities incidental to its principal business may do so by employing an independent contractor. 29 U.S.C. § 203(r).

11. The relevant part of 29 U.S.C. § 203(s) states:

> Any establishment which has as its only regular employees the owner thereof or the parent, spouse, child, or other member of the immediate family of such owner shall not be considered to be an enterprise engaged in commerce. . . .