252 F.3d 1102 (9th Cir. 2001)
 ROYAL FOODS CO. INC., PLAINTIFF-APPELLANT,
v.
RJR HOLDINGS INC., D/B/A T.G.I. FRIDAYS; RONALD BRENDZEL; JOSEPH KHOURY; CREDIT MANAGERS ASSOCIATIONS OF CALIFORNIA, A CALIFORNIA CORPORATION, DEFENDANTS-APPELLEES.
 No. 99-55634
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted February 6, 2001--Pasadena, California
Filed June 11, 2001
 
 [Copyrighted Material Omitted]
 Stephen P. McCarron, McCarron & Associates, Washington D.C.; John M. Gantus, Gantus & Associates, Glendale, California, for the plaintiff-appellant.
 C. Casey White, Tilem & White, Glendale, California; Judith Ilene Bloom, Clark & Trevithick, Los Angeles, California; Leslie R. Horowitz, Clark & Trevithick, Los Angeles, California; John A. Lapinski, Clark & Trevithick, Los Angeles, California, for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California Dickran Tevrizian, District Judge, Presiding. D.C. No. CV 98-3293 DT
 Before: Glenn L. Archer, Jr.,[1] Stephen S. Trott, and Barry G. Silverman, Circuit Judges.
 
 
 1
 The opinion of the court was delivered by: Silverman, Circuit Judge
 
 OPINION
 
 2
 Is a restaurant that buys wholesale quantities of perishable agricultural commodities and uses them in the preparation of meals "in the business of buying or selling" such commodities, and therefore, a "dealer" as defined by the Perishable Agricultural Commodities Act of 1930? We join the two other circuits that have considered this question in holding that it is --a restaurant that buys in the requisite quantities falls within the definition of a "dealer" even though it does not also sell the commodities in unchanged form.
 
 I. BACKGROUND
 
 3
 RJR, a Delaware corporation, owned and operated seven TGI Friday restaurants in California. From the fall of 1993 through 1997, RJR purchased large quantities of perishable produce for these restaurants from Royal Foods. In 1996, for example, RJR purchased $550,000 worth of produce from Royal; in 1997, RJR increased its purchases to approximately $650,000.
 
 
 4
 RJR's corporate office controlled the purchases from Royal; however, the manager of each TGI Friday restaurant ordered the kind and quantity of produce needed for his or her particular restaurant. Royal delivered the produce to each restaurant and sent invoices to each restaurant. The restaurant then forwarded the invoice to RJR headquarters and RJR issued a check to Royal. RJR had one account into which the proceeds from all restaurant sales were deposited, and from which all checks to pay Royal were drawn.
 
 
 5
 RJR failed to pay Royal for over $154,216.94 of perishable produce that Royal had delivered. Royal filed a complaint in district court to recover the unpaid balance under the statutory trust provisions of the Perishable Agriculture Commodities Act ("PACA"), 7 U.S.C. §§ 499e(c)(2). PACA protects sellers of perishable agricultural commodities by subjecting a "merchant, dealer, or retailer" of perishable produce to a trust on the proceeds of the sale of perishable produce, and food derived from that produce, for the benefit of all unpaid suppliers.[2] Therefore, when a seller of perishable agricultural commodities is not paid by a "merchant, dealer, or broker" as defined by PACA, that seller may complain to the Secretary of Agriculture or bring a civil action. 7 U.S.C.§§ 499e(b). Here, Royal brought a civil action, and the present dispute is whether a restaurant can be a "dealer" as defined by PACA. The statute says:
 
 
 6
 The term "dealer" means any person[3] engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary,[4] any perishable agricultural commodity in interstate or foreign commerce, except that (A) no producer shall be considered as a "dealer" in respect to sales of any such commodity of his own raising; (B) no person buying any such commodity solely for sale at retail shall be considered as a "dealer" until the invoice cost of his purchases of perishable agricultural commodities in any calendar year are in excess of $230,000; and (C) no person buying any commodity other than potatoes for canning and/or processing within the State where grown shall be considered a "dealer" whether or not the canned or processed product is to be shipped in interstate or foreign commerce, unless such product is frozen or packed in ice, or consists of cherries in brine, within the meaning of paragraph (4) of this section. Any person not considered as a "dealer" under clauses (A), (B), and (C) may elect to secure a license under the provisions of section 499c of this title, and in such case and while the license is in effect such person shall be considered as a "dealer".[5]
 
 
 7
 7 U.S.C. §§ 499a(b)(6).
 
 
 8
 After the lawsuit was filed, RJR initiated insolvency proceedings and thereby assigned its assets to Credit Managers Association of California. Royal amended its complaint to include CMAC as a defendant. Cross-motions for summary judgment were filed. Royal argued that RJR was holding PACA trust assets for the benefit of Royal in the amount of Royal's unpaid account. RJR contended that it was not subject to PACA trust provisions because it is not a "dealer" as defined by PACA--it is not "in the business of buying or selling" wholesale quantities of perishable commodities, but rather in the business of selling meals to consumers. The district court granted RJR's motion, holding as a matter of law that a restaurant cannot be a "dealer" under PACA.
 
 II. JURISDICTION and STANDARD of REVIEW
 
 9
 We have jurisdiction under 28 U.S.C. §§ 1291 (2001). We review de novo pure questions of law decided on summary judgment. See Jensen v. Lane County, 222 F.3d 570, 573 (9th Cir. 2000).
 
 III. DISCUSSION
 
 10
 1. PACA Section 499a(b)(6)'s Definition of"Dealer" is Unambiguous and is Broad Enough to Include a Restaurant
 
 
 11
 The first and most important step in construing a statute is the statutory language itself. Chevron USA v. Natural Res. Def. Council, 467 U.S. 837, 842-44 (1984). We look to the text of the statute to "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). If from the plain meaning of the statute congressional intent is clear, that is the end of the matter. Chevron, 467 U.S. at 843. However, if the statute is ambiguous as to the question at issue, then we go to the second step and determine the meaning of the statute's language by giving deference to the governing agency's interpretation of the statute's language. Id. at 842-44. No deference is due to the agency's interpretation unless we find that the plain meaning of the statute's language is ambiguous with regard to the precise matter at issue. See In re Magic Rests., Inc. , 205 F.3d 108, 114-15 (3d Cir. 2000), cert. denied, 121 S. Ct. 56 (Oct. 2, 2000) (quoting Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 476 (1992)). This case turns on whether section 499a(b)(6), defining a "dealer" as a person engaged "in the business of buying or selling" perishable agricultural commodities, is ambiguous as to its applicability to restaurants.
 
 
 12
 First, RJR argues that a restaurant does not fit the definition of "dealer" because a restaurant does not buy and sell such commodities, it only buys such commodities and then turns them into meals. This argument flies in the face of the plain language of the statute. "Buying or selling " means that one only needs to buy or sell, not buy and sell. 7 U.S.C. §§ 499a(b)(6). We must give the statutory language its ordinary meaning, Malat v. Riddell, 383 U.S. 569, 571 (1966), and "[w]here Congress has, as here, intentionally and unambiguously drafted a particularly broad definition, it is not our function to undermine that effort." Commodities Futures Trading Comm'n v. Frankwell Bullion Ltd., 99 F.3d 299, 303 (9th Cir. 1996) (applying the broad statutory definition of"board of trade" encompassed in 7 U.S.C. §§§§6, 6h).
 
 
 13
 Indeed, PACA recognizes that a "dealer" could include a processor--a person who buys perishable agricultural items, but does not sell them. See 7 U.S.C. § 499a(b)(6)(C). Congress explicitly excluded from the definition of"dealer" a certain type of processor--those that purchase perishable agricultural commodities, process them in the same state, and sell items that are not perishable agricultural commodities. Id. It did not exclude restaurants. Like processors, restaurants buy perishable agricultural commodities, alter them, and sell items, i.e., meals, that are no longer perishable agricultural commodities. Congress could have excluded restaurants but did not.
 
 
 14
 RJR also argues that the statute's language, "engaged in the business of," is ambiguous and does not plainly encompass restaurants because restaurants are not "primarily" engaged in the business of buying perishable commodities. RJR argues that restaurants are in the business of making meals. This argument also fails to be faithful to the text of the statute. The language of the statute does not require that an entity be engaged primarily in the business of buying or selling. It is undisputed that part of a restaurant's business includes the purchase of commodities for use in the preparation of meals. A restaurant does not buy such commodities for personal or other non-commercial purposes. It buys them solely in the ordinary course of its business.
 
 
 15
 Our court has held that an entity is engaged "in the business of" where that entity buys or sells to further its commercial enterprise. See United States v. Van Buren, 593 F.2d 125 (9th Cir. 1979) (the ordinary meaning of engaged "in the business of" means the purchase or exchange that is "regularly entered into in expectation of profit"). See also Donovan v. S & L Dev. Co., 647 F.2d 14, 17 n.6 (9th Cir. 1981) ("engaged in the business of construction" includes a leasing company which merely remodels a single building); Kaneshiro v. United States, 445 F.2d 1266, 1269-70 (9th Cir. 1971) ("engaged in the business of selling firearms or ammunition," includes a person who sells guns to two people); Fox v. Citicorp Credit Serv. Inc., 15 F.3d 1507 (9th Cir. 1994) ("engaged in the business of debt collection," includes an attorney whose purely legal practice contained collection activities). We agree with our colleagues in the Third Circuit:
 
 
 16
 [N]othing about the ordinary meaning of the words "engaged" or "business" indicates that the statutory definition should be understood to apply to those engaged primarily in this business. This"engaged in the business of" language speaks to the type of business required to invoke jurisdiction under PACA, not to the quantity thereof. Congress spoke to quantity later when it restricted the category of "dealers " to those doing business "in wholesale or jobbing quantities."
 
 
 17
 Magic Rests., 205 F.3d at 115.
 
 
 18
 We join the Third and Eighth Circuits in concluding that by virtue of the plain language of the statute, a restaurant that buys the requisite quantities of perishable agricultural commodities as part of its business is a "dealer " even if the commodities are used only in the commercial preparation of meals instead of being resold in unprocessed form.[6] In re Old Fashioned Enters., Inc., 236 F.3d 422, 425 (8th Cir. 2001); In re Magic Rests., Inc., 205 F.3d 108, 114-15 (3d Cir. 2000), cert. denied, 121 S. Ct. 56 (Oct. 2, 2000).
 
 2. Legislative History
 
 19
 RJR argues that notwithstanding the statutory language, the legislative history of PACA confirms RJR's view that Congress did not intend to include restaurants in the definition of "dealer" under PACA. We find this argument unpersuasive. There is a strong presumption that the plain language of the statute expresses congressional intent, which is"rebutted only in rare and exceptional circumstances, when a contrary legislative intent is clearly expressed." Ardestani v. I.N.S., 502 U.S. 129, 135-36 (1991) (citation omitted); see also United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989). RJR must demonstrate that this is one of those rare and exceptional circumstances. We cannot improve upon the Third Circuit's answer to this argument:
 
 
 20
 Even where the express language of a statute appears unambiguous, a court must look beyond that plain language where a literal interpretation of this language would thwart the purpose of the overall statutory scheme, United States v. Jersey Shore State Bank, 781 F.2d 974, 977 (3d Cir. 1986), aff'd, 479 U.S. 442, 107 S.Ct. 782, 93 L.Ed.2d 800 (1987), would lead to an absurd result, id., or would otherwise produce a result "demonstrably at odds with the intentions of the drafters," Demarest v. Manspeaker, 498 U.S. 184, 190 (1991) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982)).
 
 
 21
 Nevertheless, it cannot be seriously contended that holding that restaurants purchasing perishable agricultural commodities in wholesale or jobbing quantities, as defined by the Secretary, are "dealers " under PACA is contrary to the statute's purpose, absurd, or "demonstrably at odds with the intentions of the drafters." There is no clear evidence of legislative intent regarding treatment of such restaurants at the time the definition of "dealer" was originally enacted in 1930. Indeed, the only such evidence of legislative intent is the statement contained in the 1995 House Agriculture Committee report that the Committee did not intend that restaurants be included within the definition of "retailers" enacted in the 1995 PACA Amendments Act. That statement, however, is confined to the amendment. This committee report was issued more than 30 years after the last time Congress modified the definition of "dealer" in any substantial way, and dealt with issues wholly different from this definition. This report language is not something "upon which other legislators might have relied in voting for or against" the statutory definition of "dealer," and cannot constitute evidence of the legislative intent behind that definition. As the Supreme Court has observed, "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." United States v. Price, 361 U.S. 304, 313 (1960). We therefore disregard this House committee report.
 
 
 22
 Moreover, requiring restaurants that purchase large quantities of produce to comply with PACA furthers the goals of the statute as amended in 1984. Although the original PACA was enacted to protect produce growers and producers, the 1984 amendments, including the trust provision, were enacted for the protection of all produce sellers and suppliers. Holding restaurant-purchasers responsible to produce sellers such as Bowie provides protection of produce suppliers up through the distribution chain and therefore furthers the purposes of the trust provision.
 
 
 23
 Magic Rest., 205 F.3d at 116 (certain internal citations and footnotes omitted).
 
 3. Agency Deference Not Due
 
 24
 Because the statute is unambiguous, we need look no further. Congress's language controls. There is no need to defer to the United States Department of Agriculture, the agency responsible for promulgating regulations under PACA. But even if we could look to agency interpretation of the statute, the USDA has not formally interpreted PACA's definition of "dealer" in a manner that is entitled to deference. See In re San Joaquin Food Serv., Inc., 958 F.2d 938, 940 (9th Cir. 1992).
 
 
 25
 With respect to the USDA's supposed interpretation of PACA, RJR points to two things: (1) the USDA has never enforced PACA against restaurants, and (2) in soliciting comments on a regulation relating to oil-blanched frozen fruits and vegetables, the Secretary of Agriculture stated:
 
 
 26
 Another commentator representing a major restaurant chain opposed the proposed rule because he thought the change might bring restaurants under the jurisdiction of the PACA, and argued that therefore, the economic impact of the rule has been underestimated. Restaurants traditionally have not been considered subject to the PACA by USDA or Congress unless the buying arm of the restaurant is a separate legal entity, and is buying for and/or reselling the product to another entity. Since restaurants are not subject to the PACA, this change in the regulation will not impact restaurants. For the reasons stated, we are not making any changes to this final rule based on the above comments.
 
 
 27
 Perishable Agricultural Commodities Act, 61 Fed. Reg. 13385, 13386 (March 27, 1996) (codified at 7 C.F.R. §§ 46.2(u)). An agency's interpretation or regulation is given deference if it arises after formal adjudication or notice-and-comment rulemaking, or if it is an opinion expressed when the agency is regulating the precise question at issue. See Christensen v. Harris County, 529 U.S. 576, 586-88 (2000).
 
 
 28
 The USDA's apparent choice not to enforce PACA against restaurants does not constitute a USDA action subject to formal adjudication or notice-and-comment rulemaking. See generally id. Likewise, a strong statement made in the course of discussing a wholly different issue--in that instance, whether oil-blanched produce constitutes perishable produce under PACA--does not constitute an agency interpretation that is entitled to deference in this setting. See id. Neither the USDA's non-enforcement of PACA against restaurants nor its statement in connection with oil-blanched produce was subject to formal adjudication or rule-making processes.
 
 IV. CONCLUSION
 
 29
 In summary, we hold that restaurants that buy wholesale or jobbing quantities of perishable agricultural commodities fall within the unambiguous statutory definition of a"dealer" for purposes of PACA. Accordingly, we reverse the district court and remand for further proceedings consistent with this opinion.
 
 
 30
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Glenn L. Archer, Jr., Senior United States Circuit Judge for the Federal Circuit, sitting by designation.
 
 
 [2]
 7 U.S.C. §§ 499e(c)(2) states:
 (c) Trust on commodities and sales proceeds for benefit of unpaid suppliers, sellers, or agents; preservation of trust; jurisdiction of courts . . .
 (2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. Payment shall not be considered to have been made if the supplier, seller, or agent receives a payment instrument which is dishonored. The provisions of this subsection shall not apply to transactions between a cooperative association, as defined in section 1141j(a) of Title 12, and its members.
 
 
 [3]
 Person "includes individuals, partnerships, corporations, and associations." 7 U.S.C. §§ 499a(b)(1).
 
 
 [4]
 Wholesale or jobbing quantities are defined as, "aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received." 7 C.F.R. §§ 46.2 (x).
 
 
 [5]
 The regulatory definition of"dealer" mimics the statutory definition of "dealer." 7 C.F.R. §§ 46.2(m). The only difference is that instead of listing exceptions to the general rule of who is a "dealer," the regulation states a general rule and then lists certain businesses that are included in this definition. The list is not exhaustive, but rather gives a sample of businesses that are "include[d]" in the general definition. The regulation, like the statute, recognizes that certain dealers buy produce in wholesale quantities, but sell them as non-perishable products. See 7 C.F.R. §§ 46.2 (m)(4).
 
 
 [6]
 RJR makes a final, unpersuasive, argument. It contends that the plain language definition of "dealer", section 499a(b)(6) is ambiguous because it does not explicitly include restaurants. Section 499a(b)(6), however, does not enumerate any entities that fall under its definition of dealer. 7 U.S.C. §§ 499a(b)(6). Merely because a statute's plain language does not specify particular entities that fall under its definition, does not mean that the statute is ambiguous as to all those who do fall under it. See United States v. Monsanto, 491 U.S. 600 (1989).
 
 
 TROTT, Circuit Judge, Dissenting:
 
 31
 I respectfully dissent. Basically, I accept and agree with the Secretary of Agriculture's comment made in a preamble to a related 1996 regulation. The Secretary said,Restaurants traditionally have not been considered subject to the PACA by USDA or Congress unless the buying arm of the restaurant is a separate legal entity, and is buying for and/or reselling the product to another entity.
 
 
 32
 61 F.R. 13385, 13386 (March 27, 1996). Because the Secretary and the United States Department of Agriculture administer this statute, I think it appropriate to consider seriously what the Secretary says, not wave it off.
 
 
 33
 Second, I am persuaded that the district court's careful and discerning analysis of the issue has merit. The district court did not allow its reasoning to become trapped in a series of misleading premises, interpretative tools, and syllogisms that lead one to a conclusion never intended by Congress. On rare occasion, we can be so right with our legalistic approach and labels that we are wrong. With all deference to my colleagues, I believe that is what is happening here: the trees are obscuring the forest. This case provides an example of how plain language divorced from context can be very misleading. We call a table implement used for spreading butter a butter "knife," but plain language notwithstanding, it is not a "knife" at all. It has no sharp blade for cutting, no point for stabbing, and a handle thoroughly unsuitable for use as a weapon. Would we prosecute for possession of a deadly weapon a highschool senior who brings onto campus a butter knife to make a sandwich for lunch? I would hope not. And why not? Because a butter knife is not that kind of a knife; and a restaurant is not this kind of a dealer. Justice Cardozo warned against this variety of misinterpretation in Snyder v. Massachusetts, when he spoke of the "tyranny of labels." 291 U.S. 97, 114 (1934), overruled on other grounds by Malloy v. Hogan, 378 U.S. 1, 2 n.1 (1964). He counseled caution before rendering a holding that a situation not responsible for the creation of the rule under interpretation be brought under that rule just because it is "fitted to the words. " Id. The discriminating Secretary responsible for this arena understands and has correctly applied this principle.
 
 
 34
 The purpose and reach of the rule we are construing was illuminated in the House Report concerning a 1995 Amendment that defined the term "retailer." The House Report said,
 
 
 35
 Approximately 4,000 retailers are currently estimated to be licensed under PACA . . . . It is not the intent of the [House Committee on Agriculture ] that the definition of retailer be construed to include foodservice establishments such as restaurants, or schools, hospitals and other institutional cafeterias.
 
 
 36
 H.R. Rep. 104-207, 104th Cong., 1st Sess. (1995), 1995 U.S.C.C.A.N. 453; In re The Italian Oven, Inc. , 207 B.R. 839, 844 (W.D. Pa. 1997). Given this strong clue as to the cutoff point of PACA's coverage, the bankruptcy court which took note of this Report concluded that because the restaurantdefendant did not have a separate buying arm and did not resell the commodities to another entity, but instead prepared menu items to prepare meals for diners, the restaurant was not subject to PACA, and no PACA trust could be impressed. I agree.
 
 
 37
 Moreover, as the district court recognized, PACA goes to great lengths to exclude from its reach perishable fruits and vegetables which have been manufactured into articles of food. See 7 C.F.R. §§ 46.2(u) ("Fresh fruits and fresh vegetables include all produce in fresh form generally considered as perishable fruits and vegetables, whether or not packed in ice or held in common or cold storage, but do not include those vegetables which have been manufactured into articles of food of a different kind or character."). The activity of a restaurant in this regard seems clearly to be beyond this careful line of demarcation. Bluntly put, restaurants do not buy agriculture commodities for resale, but rather use them to create a wholly new and distinct product -- meals.
 
 
 38
 In summary, I conclude as did dissenting Judge Rendell in In Re Magic Restaurants, Inc., 205 F.3d 108, 117-18 (3d Cir. 2000), that as internally seductive as the majority's well written opinion is, it simply comes up with the wrong answer. I believe on this record that the controlling statute is silent as to restaurants -- it neither expressly includes nor excludes them -- because Congress never contemplated that such eating establishments could be regarded for this purpose as jobbers, distributors, dealers, or wholesalers. "Restaurants are engaged in the business of preparing and selling meals to customers. Not only is buying and selling perishables in large quantities not their primary business, it is not their business at all." In re Magic Restaurants, Inc., 205 F.3d at 117 (Rendell, J., dissenting) (emphasis in original). Whatever the technical and interpretative ways are that we can find to discount the Secretary of Agriculture's longstanding practice and persuasive opinion on this subject, the Secretary appears to be correct. The majority's opinion is right, of course, to notice that the Secretary's published views appear in a context not connected to formal adjudication or notice-and-comment rulemaking, but this is because both Congress and the Secretary considered this a nonissue. Under these circumstances, therefore, the fact that the Secretary's opinion does not arise in the context of formal administrative procedures is no reason to dismiss it.
 
 
 39
 Because restaurants are a step beyond PACA's concern, as evidenced by the House Report and the Secretary's understanding, I respectfully dissent. The majority plows new ground neither addressed by Congress nor contemplated by it. I believe this issue under our Constitution is for the policy makers on the Hill to decide, not for us.