**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  v.

JOHN LIGON,
  *Defendant-Appellant.*

No. 04-10495

D.C. No.
CR-03-00189-HDM

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  v.

CARROLL MIZELL, aka Cal Smith,
  *Defendant-Appellant.*

No. 04-10524

D.C. No.
CR-03-00189-HDM

OPINION

Appeals from the United States District Court
for the District of Nevada
Howard D. McKibben, District Judge, Presiding

Argued and Submitted
October 20, 2005—San Francisco, California

Filed March 21, 2006

Before: Stephen Reinhardt, Sidney R. Thomas, and William
A. Fletcher, Circuit Judges.

Opinion by Judge William A. Fletcher

## COUNSEL

Richard F. Cornell and Scott N. Freeman, Reno, Nevada, for appellant Ligon.

Richard F. Cornell and David R. Houstin, Reno, Nevada, for appellant Mizell.

Ronald C. Rachow and Robert Don Gifford, II, Office of the United States Attorney, Reno, Nevada, for the appellee.

## OPINION

W. FLETCHER, Circuit Judge:

Defendants John Ligon and Carroll Mizell appeal their felony convictions under 18 U.S.C. § 641 for theft of government property. They contend, inter alia, that the government did not prove that the property had a "value" within the meaning of § 641. We agree and reverse the convictions.

## I. Factual Background

The United States Forest Service ("USFS") posted a reward for information concerning the theft of several Native American petroglyphs that had been removed from an unmarked site on the side of a mountain in northwest Reno. Acting on a tip received under a "secret witness" program, Reno police found two of the petroglyphs prominently displayed in the front yard of Ligon's home, and a third in the back of his Suburban vehicle parked at his home.

USFS special agents then interviewed Ligon and Mizell. Ligon explained that he drove out to the mountainside and used a winch and a roller device to pull the three "rocks" out. He admitted that he never sought permission or advice before taking the rocks, and that he excavated them after dark. He claimed that he took the rocks in order to protect them from being "bowled over" by an encroaching construction development, and to display them in his front yard. Mizell stated that he went to the mountainside with Ligon, and he corroborated that the winch and roller device had been used to extract the petroglyphs and move them to Ligon's yard. A USFS special agent found a pry bar on the mountainside near where the petroglyphs had been, but neither Ligon nor Mizell mentioned using this tool.

A grand jury indicted Ligon and Mizell for removing archaeological resources in violation of 16 U.S.C. § 470ee

(Count I), and stealing United States government property in violation of 18 U.S.C. § 641 (Count II). Count I charged that each defendant "did knowingly excavate, remove, damage and otherwise alter and deface archaeological resources located on public lands . . . without having a permit to do so, and commercial and archaeological value and the cost of restoration and repair of said resources exceed[ed] the sum of $500." Count II charged that the defendants "did willfully and knowingly steal . . . three petroglyph rocks . . . having a value in excess of $1,000, and which was then and there the property of the United States[.]" The jury acquitted Ligon and Mizell of Count I, but found them both guilty of knowingly stealing property valued at more than $1,000 under Count II.

Before trial, a USFS archaeologist prepared a report that included an estimate of "commercial or fair market value" by Mark Bahti, the owner of "Bahti Indian Arts," a commercial art gallery in Tucson, Arizona. Bahti's report was based on photographs of the petroglyphs. Noting that they had been "badly scarred in the removal process," Bahti estimated their retail value at $800 or $900. He "conservatively" estimated that they could be sold for $1,500 if they were in good condition.

The government did not introduce Bahti's report at trial. In fact, the government introduced no evidence at all of market or other monetary value of the petroglyphs. For both Counts I and II, it relied only on "archaeological value," a valuation concept that considers the worth of archaeological information. A USFS archaeologist testified that the petroglyphs had an archaeological value in the $8,000 range, and a USFS special agent testified that she could not determine a "commercial value" for the petroglyphs, even after contacting numerous sources. The jury instruction on property value for Count II provided: "On the valuation issue as to Count Two, the government relies on archaeological value."

At the close of evidence, the defendants moved for judgments of acquittal on Count II under Federal Rule of Criminal

Procedure 29(a) on the ground that the government had introduced no evidence of value within the meaning of § 641. The district court took the motions under advisement and submitted the cases to the jury. After the jury returned verdicts of guilty on Count II, defendants renewed their motions for acquittal, now as Rule 29(c) motions. Defendants attached copies of Bahti's report to their renewed motions. The district court denied the motions.

## II. Discussion

**[1]** Section 641 criminalizes the theft of a "thing of value of the United States." 18 U.S.C. § 641. The statute provides two tiers of penalties depending on the value of the stolen property. If the value exceeds $1,000, the court can sentence the defendant to a maximum of ten years in prison. *Id.* Since this offense is "punishable" by a term of imprisonment "exceeding one year," it constitutes a felony. 18 U.S.C. § 1(1). If the value is $1,000 or less, however, the maximum sentence is one year, 18 U.S.C. § 641, which makes the offense a misdemeanor. 18 U.S.C. § 1(2). Regardless of whether the government charges a felony or a misdemeanor, value is an element of the offense, and the government must prove that the property stolen had "value." *United States v. Seaman*, 18 F.3d 649, 650 (9th Cir. 1994) (noting that "value" is an element of a § 641 offense).

**[2]** Section 641 defines "value" as "face, par, or market value, or cost price, either wholesale or retail, whichever is greater." 18 U.S.C. § 641. The historical and statutory notes to § 641 indicate that the 1948 drafters adopted this definition "to conform with that provided in section 2311 of this title." Construing § 2311, we have found that "where goods have no readily ascertainable market value, 'any reasonable method may be employed to ascribe an equivalent monetary value to the items.' " *United States v. Drebin*, 557 F.2d 1316, 1331 (9th Cir. 1977) (quoting *United States v. Lester*, 282 F.2d 750, 755 (3d Cir. 1960)). In a more recent § 641 case, we inter-

preted "market value" to include value in a so-called "thieves' market":

> In the absence of face or par value, property value is determined by market forces which establish the price at which a buyer is willing to offer the property to a willing seller. As there is no commercial market for [the property in question in this case], however, comparisons with similar transactions in a conventional market do not exist to assess the value of this particular sale. In such cases, the property's value in an illegal market may be considered. This gives § 641 its obvious, and certainly its practical, meaning, namely, the amount the goods may bring to the thief.

*United States v. Bigelow*, 728 F.2d 412, 413-14 (9th Cir. 1984) (citations and internal quotation marks omitted).

The government did not rely on the definition of "value" in § 641. Instead, it entirely relied on "archaeological value," as that term is used in 16 U.S.C. §§ 470ee(d) and 470ff(a)(2)(A), for proof of value under 18 U.S.C. § 641. The following colloquy between the district court and the government during the discussion of the defendants' Rule 29(a) motions makes this clear:

> The Court: Is there evidence in this case on the market value?
>
> Mr. Gifford [for the government]: No, Your Honor
> . . . .
>
> . . .
>
> Mr. Gifford: We only presented archaeological value, Your Honor. And that's all we're —

The Court: Okay. Is there anything here on par value?

Mr. Rachow [for the government]: Your Honor, there's no definition of par value.

The Court: Is there anything on face value?

Mr. Gifford: No, Your Honor.

The Court: Okay. So what you're relying on is the archaeological value and asking that that be extrapolated and used for purposes of Count Two in establishing the value, is that correct?

Mr. Gifford: Yes, Your Honor.

**[3]** Congress coined the term "archaeological value" when it passed the Archaeological Resources Protection Act ("ARPA") in 1979. ARPA protects "archaeological resources and sites which are on public lands and Indian lands." 16 U.S.C. § 470aa(b). Violators of ARPA are subject to penalties that vary depending on the "commercial or archaeological value of the archaeological resources involved" and the "cost of restoration and repair." *Id.* §§ 470ee(d), 470ff(a)(2).

**[4]** Regulations promulgated pursuant to ARPA define "archaeological value" as the value of archaeological information rather than the value of archaeological artifacts. These regulations share the following definition:

> Archaeological value. For the purposes of this part, the archaeological value of any archaeological resource . . . shall be the *value of the information associated with the archaeological resource.* This value shall be appraised in terms of the costs of the retrieval of the scientific information which would have been obtainable prior to the violation. These

costs may include, but need not be limited to, the cost of preparing a research design, conducting field work, carrying out laboratory analysis, and preparing reports as would be necessary to realize the information potential.

18 C.F.R § 1312.14(a); 32 C.F.R. § 229.14(a); 36 C.F.R. § 296.14(a); 43 C.F.R. § 7.14(a) (emphasis added). "Archaeological value" is based on an analysis that "go[es] back in time before the violation occurred and estimate[s] what it would have cost the United States to engage in a full-blown archaeological dig at the site" in order to obtain the archaeological information. *United States v. Quarrell*, 310 F.3d 664, 679 (10th Cir. 2002) (citation omitted).

**[5]** "Archaeological value," so defined, is not the equivalent of, nor is it encompassed by, "face, par, or market value, or cost price, either wholesale or retail," as those terms are used to define "value" in § 641. Moreover, our case law is clear that acceptable alternative methods of calculating value under §§ 2311 and 641 are permissible only where market value is not readily ascertainable. *See Bigelow*, 728 F.2d at 414; *Drebin*, 557 F.2d at 1331. Here, the government had evidence of the petroglyphs' market value but did not introduce that evidence at trial.

We recognize that for theft offenses involving "archaeological resources," the Sentencing Guidelines impose an enhancement that is tied to "archaeological value," irrespective of whether the government obtains the conviction under § 641 or ARPA. *See* U.S.S.G. app. C, amend. 638; U.S.S.G. §§ 2B1.1(c)(4), 2B1.5(b)(1) & cmt. n.1(C), n.2(A)(i), n.2(C)(i). But the Sentencing Guidelines do not apply until the government secures a conviction under a statute such as § 641 in accordance with the statutory terms.

The government's choice not to introduce any evidence of "value" within the meaning of § 641 unfortunately leaves us

little choice. It is clear that Ligon and Mizell stole the petroglyphs. It is equally clear that the petroglyphs had a market value, as evidenced by Bahti's report. But the government did not introduce that report into evidence, or indeed anything else that might have served as evidence of "value" within the meaning of § 641, although it obviously could have done so. We therefore are constrained to reverse the district court's denial of the defendants' Rule 29(c) motions.

## Conclusion

[6] "Archaeological value," as that term is used in 16 U.S.C. §§ 470ee(d) and 470ff(a)(2)(A), and in the regulations promulgated thereunder, does not come within the definition of "value" as that term is used in 18 U.S.C. § 641. Because the government introduced no evidence other than "archaeological value" to prove that Ligon and Mizell stole something of "value" belonging to the government in violation of § 641, the district court should have granted their motions for acquittal.

**REVERSED.**