**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

MICHAEL SARGENT,
          *Defendant-Appellant.*

No. 06-30498

D.C. No.
CR-05-00118-a-
RRB

OPINION

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted
August 6, 2007—Anchorage, Alaska

Filed September 20, 2007

Before: J. Clifford Wallace, John T. Noonan, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Wallace

12805

**COUNSEL**

Mary C. Geddes, Assistant Federal Defender, Anchorage, Alaska, for the appellant.

Retta-Rae Randall, Assistant United States Attorney, Anchorage, Alaska, for the appellee.

**OPINION**

WALLACE, Senior Circuit Judge:

Sargent was indicted in one count for theft of public property in violation of 18 U.S.C. § 641 and seven counts for theft of postal service property in violation of 18 U.S.C. § 1707.

After a bench trial, the district court entered a judgment of conviction on all eight counts and sentenced Sargent to a term of imprisonment of 30 months on six counts and 12 months on two counts, all to run concurrently. Sargent appeals both the conviction and the sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

**I**

Bulk mail permit holders must pre-pay the United States Postal Service (USPS) for their mailings. To do so, they deposit money with a cashier at the retail counter of the post office. The cashier registers the payment in an accounting system called Point of Service One (POS 1). The cashier then sends a record of the transaction to the business mail entry unit (BMEU), where a clerk or technician enters the information into a different and non-integrated accounting system called PostalOne.

Bulk mailers bring their mail to the BMEU with a Postage Statement that contains certain information, including the name and address of the mailer as well as an estimate of the postage due. A technician inspects a sampling of the mail to ensure that it is correctly identified in the Postage Statement. The information on the Postage Statement is then entered into the PostalOne system. If the postage-due calculation in the PostalOne system matches the mailer's estimate, then funds are withdrawn from the mailer's POS 1 account and paid to the USPS for the mailing.

Once the funds have been transferred, at least two copies of a "3607" form are generated. One copy is attached to the Postage Statement and filed with the USPS. The second copy goes to mail processing, indicating that the mail has been paid for and is ready for delivery.

For twenty-nine years, Sargent worked as a bulk mail technician at the USPS office at the Anchorage International Air-

port. Late in 2004, he became dissatisfied with his employer and hatched a vengeful scheme. In hundreds of instances in 2005, he stole mailers' Postage Statements and failed to generate the 3607 forms. He then watched to see if his co-workers delivered the undocumented mailings. At home, Sargent recorded whether these undocumented mailings were delivered or detected before delivery.

In early April 2005, a United States Postal Inspector discovered that bulk mail was being delivered, but that postage was not collected for the mailings. Sargent became a suspect and was later arrested.

The first count of the subsequent indictment charged that Sargent violated section 641 when he "did knowingly steal . . . any record, voucher, and thing of value in excess of $1000 of the United States . . . , to wit: postage statements for business mailings." Counts two through eight charged that Sargent violated section 1707 when he "did knowingly steal" seven Postage Statements noting total postage in amounts ranging from $1,352.22 to $2,463.68.

Sargent waived his right to a jury trial and admitted the elements of the charged offenses except the element of value, which he sought to have determined in a bench trial. The district court conducted the trial, and at the close of the government's evidence, Sargent moved for a judgment of acquittal. The government conceded that it had failed to establish that the value of the Postage Statements underlying counts five and six exceeded $1,000, but stipulated that the counts "could be misdemeanor . . . charges." The district court denied Sargent's motion.

Also at the trial, the district court overruled Sargent's hearsay objection to the testimony of Beverly Christie, a USPS manager. She stated that mailers said they would not pay without the "postage statement[s] or some other documentation to show that [the USPS] actually made the mailing."

In its written decision, the district court found that the value of the Postage Statements underlying counts five and six was less than $1,000, but that the "face value" of the Postage Statements underlying the remaining counts exceeded $1,000. The separate judgment indicates that the district court found Sargent guilty "on count(s) 1 through 8 of the Indictment."

At sentencing, Sargent objected to the district court's application of the abuse-of-trust enhancement under United States Sentencing Guideline (U.S.S.G.) § 3B1.3. On appeal, he has renewed this objection as well as his objection to the admission of Christie's testimony. He also contends that his sentence was unreasonable regardless of whether the district court properly applied the Guidelines. We need not address any of these issues if the government failed to establish the necessary element of value for any of the crimes charged in the indictment.

## II

**[1]** The district court erred by holding that the government proved the Postage Statements had "value" in excess of $1,000 within the meaning of section 641. "The statute provides two tiers of penalties depending on the value of the stolen property. If the value exceeds $1,000, the court can sentence the defendant to a maximum of ten years in prison. . . . If the value is $1,000 or less, however, the maximum sentence is one year . . . ." *United States v. Ligon*, 440 F.3d 1182, 1184 (9th Cir. 2006). If the value exceeds $1,000, the crime is a felony, but otherwise it is a misdemeanor. *See id.* Either way, section 641 requires that the government prove that the stolen property had "value," which is defined as "face, par, or market value, or cost price, either wholesale or retail, whichever is greater," 18 U.S.C. § 641.

**[2]** The statute does not define face value, so we "look to the text of the statute to determine whether the language at issue has a plain and unambiguous meaning." *Royal Foods*

*Co., Inc. v. RJR Holdings, Inc.*, 252 F.3d 1102, 1106 (9th Cir. 2001) (internal quotations and citation omitted). The plain meaning of face value is the value indicated on the face of a financial instrument. *Black's Law Dictionary*, for instance, states that face value is the "value of an insurance policy, bond, note, mortgage, or other security, as given on the certificate or instrument, payable upon maturity of the instrument." *Black's Law Dictionary* 591 (6th ed. 1990). Lay dictionaries also emphasize that face value refers to the value printed on the face of a financial instrument. *See The Random House Dictionary* 690 (2d ed. 1987) (defining face value as "the value printed on the face of a stock, bond, or other financial instrument or document"); *see also The American Heritage Dictionary* 632 (4th ed. 2000) (defining face value as "[t]he value printed or written on the face, as of a bill or bond").

This interpretation is consistent with *United States v. Lee*, 454 F.2d 190 (9th Cir. 1972). There, we affirmed the defendant's section 641 conviction, holding that "[i]n a prosecution for the theft of evidences of debt," the applicable definition of value "under the statute is 'face value', that is the amount for which the check is drawn." *Lee*, 454 F.2d at 192. *Lee* also stated that "value is deemed to be the money due on the *instrument*." *Id.* (quotations and citation omitted) (emphasis added).

We have interpreted section 641 to conform with 18 U.S.C. § 2311, *see Ligon*, 440 F.3d at 1184, and in interpreting section 2311, the Fifth Circuit has stated that "[t]he plain meaning of 'face value' is 'the value indicated on the face of an *instrument*.'" *United States v. Onyiego*, 286 F.3d 249, 254 (5th Cir. 2002) (emphasis added), *quoting Merriam-Webster's Dictionary* 812 (3d ed. 1993). Interpreting face value to refer to the value indicated on the face of a financial instrument thus avoids inter-circuit conflict.

**[3]** Postage Statements are not financial instruments because no money is due on their presentation and they are

not negotiable. They are for accounting purposes only; they allow the USPS to synchronize its POS 1 and PostalOne computer systems. The district court thus erred by holding that the Postage Statements had a face value in excess of $1,000 within the meaning of section 641.

**[4]** Furthermore, the district court erroneously concluded that the defendant's motive is evidence of value. Section 641 defines value with reference to objective factors, and there is no suggestion that the defendant's subjective intent determines the issue of value. Sargent may have intended to cause the USPS many hundreds of thousands of dollars in damage, but that does not mean that he valued any Postage Statement or all of them at a particular dollar amount.

**[5]** Likewise, the theft of the Postage Statements may have exposed the USPS to loss, but that does not mean that the USPS necessarily valued the Postage Statements in the full amount of the potential loss. Indeed, Christie testified that in "most cases" the USPS had been able to "provide or construct" documentation proving how much customers owed. There was no showing that the USPS would have paid any amount to recover the stolen Postage Statements, let alone hundreds of thousands of dollars.

**[6]** *United States v. Gordon*, 638 F.2d 886 (5th Cir. 1981), does not suggest a different result. There, the defendant was convicted under section 641 of stealing marijuana from a vessel seized by the Coast Guard. *Gordon*, 638 F.3d at 887. On appeal, he argued that "the marijuana was not a 'thing of value,' insisting that the required 'value' must be value to the Government, not to smugglers or outlaws." *Id.* at 889. The Fifth Circuit disagreed, holding that value "may also be thieves value." *Id.* (quotations and citation omitted). By contrast, there is no evidence that the Postage Statements had any "thieves value."

*United States v. Robie*, 166 F.3d 444 (2d Cir. 1999), is similarly inapposite. There, the defendant stole misprinted post-

age stamps from the USPS. *Robie*, 166 F.3d at 447. The Second Circuit held that the government failed to establish the value of the stamps on the thieves' market. *See id.* at 449. Nevertheless, according to the Second Circuit, the defendant's "knowledge that, with the right misrepresentation, the [stamps] might be sold for significant sums, his willingness to brave . . . security measures to obtain them, combined with the other circumstances of their theft and sale, permitted the jury to infer as it did that their value then exceeded the statutory threshold." *Id.* Even accepting the analysis in *Robie*, there was no showing here that Sargent knew that the Postage Statements could be sold for any amount, let alone "significant sums."

On appeal, the government contends that value includes actual loss to the victim. We need not decide the issue because the government did not present evidence showing that the theft of the Postage Statements caused the USPS a particular dollar amount of actual loss, and the district court did not make findings to this end.

**[7]** Finally, the government asserts that value includes the amounts recorded on the Postage Statements because those amounts reflect the "cost price" of the USPS delivering the mail. True, section 641 requires that we assess the "cost price" of the stolen "thing of value." But according to the indictment, that "thing of value" was the Postage Statements, not the USPS's services. Therefore, the government's "cost price" argument fails.

**[8]** Because the government did not establish value in excess of $1,000, which is a necessary element of the section 641 crime charged, the district court's judgment of conviction on count one must be reversed.

**[9]** The district court also erred by holding that the government proved the Postage Statements had "value" in excess of $1,000 within the meaning of 18 U.S.C. § 1707. The statute

makes it a crime to steal "any property used by the Postal Service." 18 U.S.C. § 1707. The statute also provides that if the value of the property exceeds $1,000, the defendant shall be imprisoned for no more than three years, but otherwise the defendant is eligible for a sentence of no more than one year. *Id.* Section 1707 does not define value, and neither the government nor Sargent contends that this element of the felony offense should be interpreted differently than how it is interpreted in section 641. Therefore, we also reverse the district court's judgment of conviction on the remaining felony counts.

**REVERSED.**