### C.H. ROBINSON COMPANY, Plaintiff–Appellee,

First Capital Corporation, Bacchus Associates, Stanley Orchard Sales, Inc. and Jac Vandenburg, Inc., Intervenor–Plaintiff–Appellees,

v.

ALANCO CORP., Defendant–Appellant,

**Alan I. Elkin, Defendant.**

No. 00–7148.

United States Court of Appeals,
Second Circuit.

Argued Sept. 13, 2000.

Decided Feb. 02, 2001.

Archer & Greiner, Haddonfield, NJ (Stephen M. Packman, of counsel), for plaintiff-appellee.

Mark C.H. Mandell, Annandale, NJ, for defendant-appellant.

Before CABRANES and PARKER, Circuit Judges, and CEDARBAUM, District Judge.*

CEDARBAUM, District Judge:

The question raised on this appeal is whether an attorney who represented a produce purchaser in a suit to collect accounts receivable may enforce a lien for unpaid attorney's fees against the proceeds of the suit when the proceeds are held in trust for the original seller under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a et seq. In the District Court, Magistrate Judge Peck[1] ruled that the lien was not enforceable. For the reasons discussed below, we affirm.

## BACKGROUND

Plaintiff–Appellee C.H. Robinson Company ("Robinson") is a seller of perishable agricultural commodities. Defendant–Appellant Alanco Corp. ("Alanco") was a licensed produce broker and dealer as defined by PACA. Alanco purchased wholesale quantities of perishable agricultural commodities from companies like Plaintiff Appellee and resold them to wholesale market receivers in the New York metropolitan area. For a commission, it also arranged and negotiated contracts of sale between suppliers and receivers. Alanco ceased all operations in 1998 and has since been liquidated. At the time Alanco ceased its operations, it owed Robinson more than $200,000 for unpaid produce purchases.

In December of 1996, Alanco and other unpaid produce sellers brought an action against Freshway Produce Corporation ("Freshway"), a terminal market receiver. This action was consolidated with an action brought by Robinson against Freshway. In February of 1999, the Freshway action was settled and Alanco received $78,000 of its $92,000 claim. This recovery was Alanco's sole remaining asset.

Robinson filed the present action against Alanco and Alan I. Elkin, Alanco's president and sole shareholder, seeking recovery of Alanco's accounts receivable for produce it had purchased from Robinson and resold to Freshway, and seeking recovery against Elkin for alleged dissipation of the PACA trust res held by Alanco for the benefit of Robinson. The District Court ordered all produce suppliers holding claims against Alanco to intervene in the action. Plaintiff–Appellees Jac Vandenburg, Inc., Bacchus Associates, Stanley Orchard Sales, Inc. and First Capital Corporation intervened. Together, appellees represent all unpaid sellers of produce to Alanco.

Robinson settled its claims against Elkin personally in May 1999. In July 1999, Robinson settled its claims against Alanco. Alanco turned over to Robinson all but $18,960.57 of the $78,000 in proceeds from the Freshway litigation. Mark Mandell, attorney for Alanco, withheld the balance and made an application to the District Court to enforce an attorney's lien on the $18,960.57 pursuant to New York Judiciary Law § 475.[2]

---

* Honorable Miriam Goldman Cedarbaum, United States District Judge for the Southern District Of New York, sitting by designation.

[1]. The parties consented to determination of this issue by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). *C.H. Robinson Co. v. Alanco Corp., et al.,* No. 97 Civ. 6018(AJP), 2000 WL 101238, at *1 (S.D.N.Y. Jan.28, 2000).

[2]. New York Judiciary Law § 475 provides that "the attorney who appears for a party has a lien upon his client's cause of action ... which attaches to a verdict, report, determination, decision, judgment, or final order in his client's favor." N.Y. Jud. L. § 475 (McKinney 1983).

Mandell contends that he is entitled to the disputed sum as payment for fees he earned performing necessary services to collect Alanco's accounts receivable, which were held in trust for the benefit of Robinson under PACA. Mandell argues that his services were in fulfillment of Alanco's duty to the PACA trust beneficiaries and solely for their benefit, and, therefore, he is entitled to be paid out of the trust res under general principles of trust law. Robinson argues that, as the beneficiary of a PACA trust, it is entitled to the entire sum.

## DISCUSSION

■ Under PACA, purchasers of produce on credit are required to hold the produce and its proceeds, including accounts receivable and derivatives, "in trust for the benefit of all unpaid suppliers or sellers of such commodities ... until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers [or] sellers." 7 U.S.C. § 499e(c)(2) (1999); *see also In re Kornblum & Co.*, 81 F.3d 280, 284 (2d Cir.1996). PACA "imposes a 'non-segregated floating trust' on the commodities and their derivatives, and permits the commingling of trust assets without defeating the trust.... Through this trust, the sellers of the commodities maintain a right to recover against the purchasers superior to all creditors, including secured creditors." *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir. 1995). To preserve benefits under a PACA trust, the unpaid produce seller must deliver written notice to the buyer. 7 U.S.C. § 499e(c)(3). It is undisputed that Alanco gave notice as required by § 499e(3), and the withheld cash now at issue is a PACA trust asset held by Alanco for the benefit of Robinson.

■ The question is whether Alanco was authorized under PACA to use PACA trust assets to pay attorney's fees that were reasonably necessary to collect its Freshway receivables. Magistrate Judge Peck held that Mandell's § 475 lien would be enforceable only if Alanco, as a PACA

trustee, was permitted to withdraw funds from the PACA trust res to pay expenses incurred in collecting trust funds. *C.H. Robinson Co. v. Alanco Corp*, 2000 WL 101238, at *4 (S.D.N.Y., 2000). He held that Alanco was not so authorized. *Id.*

Alanco's position is that the PACA trust is governed by ordinary principles of trust law. It is blackletter trust law that a "trustee can properly incur expenses which are necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust." Restatement of Trusts (Second) § 188 (1957). A trustee also has a duty "to take reasonable steps to realize claims which he holds in trust." *Id.* at § 177. Alanco argues that, under these principles of trust law, it was duty-bound to bring the collection suit against Freshway and was authorized to expend PACA trust assets to do so.

In support of this argument, Alanco relies on cases in which courts have said that "[o]rdinary principles of trust law apply to trusts created under PACA." *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th Cir.1997); *see also C.H. Robinson Co. v. Trust Co. Bank*, 952 F.2d 1311 (11th Cir.1992). This Court has made similar statements. *See Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 615 (2d Cir.1998)("The trust created by PACA is governed by general principles of trust law."); *In re Kornblum*, 81 F.3d at 284 ("Ordinary principles of trust law apply to the trusts created under the Act."); *Endico Potatoes*, 67 F.3d at 1067 ("Although not expressly stated in PACA, courts have unanimously held that the trust created by PACA is governed by general trust principles.").

Alanco's reliance on such general statements, however, is misplaced. General comments in cases in which there was no clash between the language of PACA and common law trust principles do not undermine the most fundamental principle of statutory interpretation that the language of the statute must govern. None of the

cases cited by Alanco held that a PACA trustee may use PACA trust assets for anything other than paying the seller.

In *Albee Tomato* and *Endico Potatoes,* we applied the principle that a bona fide purchaser for value of PACA trust assets may retain the assets even though they were transferred in breach of the trust. *Albee Tomato,* 155 F.3d at 615–616; *Endico Potatoes,* 67 F.3d at 1067–68; *see also C.H. Robinson Co.,* 952 F.2d at 1314 (applying bona fide purchaser rule in context of PACA trust); *Consumers Produce Co. v. Volante Wholesale Produce, Inc.,* 16 F.3d 1374, 1380 (3rd Cir.1994) (same); *see generally* Restatement of Trusts (Second) § 284 (1959). We applied the common law principle because "PACA does not impose explicit obligations upon, or provide explicit remedies against, third-party transferees who receive trust property in breach of trust." *Albee Tomato,* 155 F.3d at 615.

In *Kornblum,* we said that, in accordance with trust law, a PACA trustee holds legal title to PACA trust assets but the seller retains an equitable interest in the trust assets pending full payment, so that the Bankruptcy Code excludes PACA trust assets from the PACA trustee's bankruptcy estate. *In re Kornblum,* 81 F.3d at 284; *see also In re San Joaquin Food Serv., Inc.,* 958 F.2d 938, 939 (9th Cir.1992); *see generally* 11 U.S.C. § 541(d) (1999); Restatement (Second) of Trusts § 2 (1959). That holding was essential to further the stated purpose of PACA—to give unpaid produce sellers priority over secured creditors in case a buyer defaults. *In re Kornblum,* 81 F.3d at 283–284; *see* 7 U.S.C. § 499e(c)(1).

■ Trusts created under PACA are statutory trusts, and common law trust principles are not applicable if they conflict with the language of the statute, the clear intent of Congress in enacting the statute, or the accompanying regulations. *Cf. Varity Corp. v. Howe,* 516 U.S. 489, 497, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (interpreting ERISA and holding that "[i]n some instances, trust law will offer only a starting point, after which courts must go on to ask whether, or to what extent, the language of the statute, its structure, or its purposes require departing from common-law trust requirements").

For example, trustees are generally required to keep trust assets separate from non-trust assets. Restatement (Second) of Trusts § 179 (1959). Under PACA, however, PACA trustees are specifically permitted to commingle PACA trust assets. 7 C.F.R. § 46.46(b) ("Trust assets are to be preserved as a nonsegregated 'floating' trust. Commingling of assets is contemplated."). The applicability of any principle of trust law to a PACA trust must be tested against the language and purpose of the statute and the accompanying regulations.

As with any question of statutory interpretation, we first look to "the language of the statute itself." *In re Kornblum,* 81 F.3d at 285–286 (internal quotations omitted); *see also Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The trust provision of PACA requires a produce buyer to hold the produce and its proceeds and derivatives in trust for the benefit of the seller "until full payment of the sums owing in connection with such transactions has been received" by the unpaid seller. 7 U.S.C. § 499e(c)(2). It is clear from the language of PACA that beneficiaries are entitled to full payment of the contract price for the sale of produce. Unlike most common law trusts, a PACA trust entitles the trust beneficiary to a sum certain. The trust requirement is intended to supplement the seller's contract rights.

The accompanying regulations also indicate that PACA trustees have a duty under PACA to pay the full amount of the debt owed to their produce suppliers. The regulations define "dissipation" of trust assets as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid [sellers] to recover money owed in connection with produce transac-

tions." 7 C.F.R. § 46.46(a)(2). Because Alanco has been liquidated, any payment of fees to Mandell out of the Freshway recovery would impair the ability of Robinson to recover the money it is owed under PACA. The regulations further state that "Commission merchants, dealers and brokers are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." 7 C.F.R. § 46.46(d).

Courts have recognized that the intent of Congress in enacting PACA's trust provision was to provide unpaid produce sellers with greater protection from the risk of default by buyers. *Endico Potatoes,* 67 F.3d at 1067; *In re Kornblum,* 81 F.3d at 283 (Congress enacted the trust provision "to broaden the protections afforded to produce suppliers"). *See also Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.,* 222 F.3d 132, 135–136 (3rd Cir.2000); *Hiller Cranberry Products, Inc. v. Koplovsky,* 165 F.3d 1, 6 (1st Cir.1999); *In re Southland + Keystone,* 132 B.R. 632, 639 (9th Cir. BAP, 1991) (PACA "was established by Congress to protect sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received")(internal quotations omitted). Allowing a defunct PACA trustee to pay other creditors with PACA funds before the seller is paid in full would frustrate this purpose, and would be contrary to the language of PACA and its accompanying regulations. PACA trust beneficiaries are entitled to full payment before trustees may lawfully use trust funds to pay other creditors.

■ The other cases cited by Alanco, in which non-PACA trustees were allowed to use PACA funds to pay the costs of collecting and distributing PACA assets, are inapposite. *See In re Southland + Keystone,* 132 B.R. at 643 (allowing a bank that collected a PACA trustee's accounts receivable and was ordered to disgorge the proceeds to the produce seller to retain a portion of the trust funds to pay collection costs); *In re United Fruit and Produce*

*Co.,* 119 B.R. 10, 13 (Bankr.D.Conn.1990) (allowing trustee in bankruptcy to use PACA funds to pay collection costs). Even if we were to adopt the rule announced in *In re Southland + Keystone* for non-PACA trustees, we would not extend it to the case at bar because Alanco is a PACA trustee. As Magistrate Judge Peck noted, a PACA trustee has a fiduciary obligation under PACA to repay the full amount of the debt owed to the PACA beneficiary. Bankruptcy trustees and other collecting agents may not owe the same fiduciary duties to PACA beneficiaries, and therefore the law governing them is inapplicable.

■ Alanco's prediction that a ruling against it will have dire consequences for the produce industry is hyperbole. A PACA trustee may use trust assets to pay ordinary business expenses as long as it does not do so at the expense of its PACA beneficiaries, or in any way impair the ability of the beneficiaries to collect money owed in connection with produce sales. *See* Department of Agriculture Explanation of the Regulations Under PACA, 49 F.R. 45735, 45738 ("Trust assets are available for other uses by the buyer or receiver. For example, trust assets may be used to pay other creditors. It is the buyer's or receiver's responsibility as a trustee to insure that it has sufficient assets to assure prompt payment for produce and that any beneficiary under the trust will receive full payment...."). To satisfy its obligations under PACA, a produce buyer must simply "maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." 7 C.F.R. § 46.46(d)(1).

## CONCLUSION

We hold that a PACA trustee may not use PACA funds to pay attorney's fees incurred in collecting accounts receivable held in trust for a seller of perishable agricultural commodities. Since Alanco may not use PACA trust funds to pay

Mandell, Mandell's § 475 lien is not enforceable against such funds. Accordingly, we affirm the District Court's order denying Mandell's application and vacating the lien.