**A & J PRODUCE CORP., Plaintiffs,**

v.

**Sung L. CHANG d/b/a MC Park, Sung L. Chang d/b/a MC PM, Natural Farms, Inc., Jong Kim, Bergen Farms Market, Inc., Jong Soo Lee, Union Farm, Inc., Kyu Jin Shon, Woodbridge Farm, Inc., Sung Sik Park, Teaneck Rd. Farms, Inc., Heuk S. Lee, Theresa & Joseph Corp., and Onyi Nam, Defendants.**

**No. 03 Civ. 9951(HB).**

United States District Court, S.D. New York.

April 4, 2005.

---

Leonard Kreinces, Kreinces & Rosenberg, PC, Westbury, NY, for Plaintiff.

## OPINION & ORDER

BAER, District Judge.[*]

Plaintiff, A & J Produce Corp. ("A & J"), filed the instant action against Sung L. Chang d/b/a MC Park and MC PM (collectively, "Chang"), Natural Farms, Inc. ("Natural"), Jong Kim ("Kim"), Bergen Farms Market, Inc. ("Bergen"), Jong Soo Lee ("Jong Lee"), Union Farm, Inc. ("Union"), Kyu Jin Shon ("Shon"), Woodbridge Farm, Inc. ("Woodbridge"), Sung Sik Park ("Park"), Teaneck Rd. Farms, Inc. ("Teaneck"), Heuk S. Lee ("Heuk Lee"), Theresa & Joseph Corp. ("Theresa"), and Onyi Nam ("Nam") to recover payment for unpaid produce sold pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a et seq. Pursuant to Fed.R.Civ.P. 56, Kim, Natural, Union, and Shon (collectively, the "Kim Defendants"), joined by Woodbridge and Park (collectively, the "Woodbridge Defendants") and Chang, move for summary judgment.[1] For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

## I. BACKGROUND

### A. Factual Background

#### 1. The Parties

A & J is a wholesaler of fresh fruits and vegetables that operated at 140 New York City Terminal Market, Hunts Point, New York. (Am. Compl. at ¶ 3.) Chang was a deliveryman in the New York metropolitan area for small green grocery retailers, including Defendants Kim and Woodbridge (together, "Retailers").[2] (Chang Aff. at ¶ 6.) The other defendants were allegedly dealers in perishable agricultural commodities in the same area.[3] (Am. Compl. at ¶¶ 6–17.)

#### 2. The Transaction

The manner in which Chang conducted business is uncontested. Chang was a produce deliveryman. (Alexander Park Aff. at ¶ 3.) In the evenings, Retailers ordered their produce for the next day through Chang. The following day, Chang drove his truck to Hunts Point, filled the orders, and delivered the produce to the Retailers. (Chang Aff. at ¶ 7.) Upon delivery of the produce, Chang received payment for the produce from the Retailers. Chang was to deliver the payment to the seller. The form of payment varied; sometimes the Retailers provided cash, while other times Retailers paid by checks made out to A & J. Chang delivered these payments to the produce sellers at Hunts Point, including A & J. (Chang Aff. at ¶ 8; Bonomolo Decl. at ¶ 3; Lacher Decl. at ¶ 3.) Meanwhile, the Retailers paid Chang a flat fee for the delivery service. (Chang Aff. at ¶ 5.)

### B. Procedural History

In December 2003, A & J filed the instant action against Chang for failure to

[*] Rachel Rubin, a spring 2005 intern in my Chambers, and currently a third-year law student at Brooklyn Law School, provided substantial assistance in the research and drafting of this Opinion.

1. As of April 4, 2005, Nam, Bergen, Jong Lee, Teaneck, Heuk Lee, and Theresa have not yet appeared.

2. For the purposes of simplicity, this group of Defendants is referred to as "Retailers," even though this category includes the individually named defendants Jong Lee, Kim, and Park.

According to Alexander Park, the manager of Woodbridge Farms, Inc., Defendant Sung Sik Park is only an employee of Woodbridge Farms and not in a position of authority. (Park Aff. at ¶ 2).

3. "The term 'perishable agricultural commodity'—(A) Means any of the following, whether or not frozen or packed in ice: Fresh fruits and fresh vegetables of every kind and character; and (B) Includes cherries in brine as defined by the Secretary in accordance with trade usages." 7 U.S.C. § 499a(b)(4).

pay for perishable agricultural commodities sold and delivered to him. (Compl. at ¶¶ 8–11) (Dckt. 1.) A & J simultaneously moved for a preliminary injunction to require Chang to place in trust the amount of the unpaid invoices. (Dckt. 3.) As part of his opposition to Plaintiff's application for a preliminary injunction, Chang included names and addresses of Retailers who were customers of A & J. (Chang Aff. at ¶¶ 13, 15, 17.) Shortly thereafter, the motion for preliminary injunction was withdrawn on consent. (Dckt. 8.) In May 2004, A & J filed an Amended Complaint which added the Retailers named by Chang in his Opposition to the Preliminary Injunction as defendants. (Am.Compl.) (Dckt. 15.)

In September 2004, Woodbridge Defendants interposed an Answer with Affirmative Defenses and Cross–Claims. (Woodbridge Ans.) (Dckt. 32.) Woodbridge asserted a cross-claim that it paid Chang for all of A & J's produce delivered to it, and that Chang failed to deliver the money to A & J. (Woodbridge Ans., Cross–Claims at ¶¶ 9–14.)

## II.  *APPLICABLE STANDARD*

### A.  *Summary Judgment Standard Fed. R.Civ.P. 56(c)*

A court will not grant a motion for summary judgment unless it determines that there is no genuine issue of material fact and the undisputed facts are sufficient to warrant judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). In determining whether there is a genuine issue of material fact, the Court must resolve all ambiguities, and draw all inferences, against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (*per curiam* ); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). It is not the court's role to resolve issues of fact; rather, the court may only determine whether there are issues of fact to be tried. *Donahue*, 834 F.2d at 58 (citations omitted). However, a disputed issue of material fact alone is insufficient to deny a motion for summary judgment, the disputed issue must be "material to the outcome of the litigation," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), and must be backed by evidence that would allow "a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III.  *DISCUSSION*

Enacted in 1930, PACA was intended to:
[E]ncourage fair trading practices in the marketing of perishable commodities by suppressing unfair and fraudulent business practices in marketing of fresh and frozen fruits and vegetables ... and provid[e] for collecting damages from any buyer or seller who fails to live up to his contractual obligations.

*Endico Potatoes v. CIT Group/Factoring*, 67 F.3d 1063, 1066 (2d Cir.1995) (citation omitted). In 1984, PACA was amended to require that certain purchasers create and maintain a statutory trust to protect unpaid suppliers and sellers of covered commodities. *Id* at 1067. Congress was concerned that "as a result of the exigencies of the perishable commodities business, sellers were typically required to sell their produce quickly and frequently found themselves in the position of unsecured

creditors of buyers whose creditworthiness could not be verified." *Am. Banana Co. v. Republic Nat'l Bank of N.Y.*, 362 F.3d 33, 37 (2d Cir.2004). In particular, when buyers defaulted, sellers had difficulty collecting money owed to them because the commodities perished and other lenders often had priority over the assets of the defaulting purchaser. *Id.* The Second Circuit noted Congress' expressed intent to provide a remedy to sellers by ensuring that "the sellers' interests in the commodities and sales proceeds [were] superior to those of the buyers' creditors, including secured creditors." *Id.See also Albee Tomato Co., Inc. v. Korea Comm'l Bank of N.Y.*, 282 F.Supp.2d 6, 10 (S.D.N.Y.2003).

Indeed, Section 499e(c)(2) of PACA provides:

Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, *shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment* of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2) (emphasis added); *see also Am. Banana Co., Inc. v. Republic Nat'l. Bank of N.Y.*, 362 F.3d 33, 37 (2d Cir.2004). To recover the proceeds from a PACA created trust, a plaintiff must demonstrate:

(1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by the law.

7 U.S.C. § 499e; *see Chiquita Fresh, N.A. v. Specialty Produce Co.*, No. 02 Civ. 269, 2003 U.S. Dist. Lexis 24389, at *7 (E.D.Tenn. May 2, 2003); *Reaves Brokerage Co. v. Fid. Factors, L.L.C.*, No. 99 Civ. 2848, 2001 WL 34111601, at *3 (N.D.Tex. Oct. 17, 2001)(same).

Here, the parties do not dispute that the commodities sold were perishable agricultural commodities or that the transaction involved interstate or foreign commerce. In addition, A & J's failure to receive full payment is sufficiently pled and not in dispute here.

▮ There are, however, two contested issues. First, was Chang a "commission merchant, dealer or broker"? PACA "restricts those subject to liability to 'commission merchant[s], dealer[s] or broker[s]' and defines these terms in great detail." *Eastside Food Plaza, Inc. v. "R" Best Produce, Inc.*, No. 03 Civ. 106, 2003 WL 21727788, at *2 (S.D.N.Y. July 23, 2003). Second, whether A & J preserved its trust rights in accordance with the PACA notice requirement. While PACA imposes a trust requirement when perishable agricultural commodities are delivered, "to preserve benefits under a PACA trust, the unpaid produce seller must deliver written notice to the buyer." *C.H. Robinson Co. v. Alanco Corp.*, 239 F.3d 483, 486 (2d Cir.2001).

A. *Commission Merchant, Dealer or Broker*

Chang maintains that a deliveryman fails to satisfy the PACA definition of a "dealer" and, therefore, he is not subject to PACA and, by extension, to this Court's

jurisdiction.[4] *See Magic Am. Café, Inc. v. Bowie Produce Co.,* No. 95 Civ. 376, 1999 Lexis 21045, at *5 (D.Del. Jan. 6, 1999) ("As a prerequisite to recovery under PACA, the seller must establish that the purchaser of perishable agricultural commodities qualifies as a 'commission merchant,' 'dealer' or 'broker' under the Act."). As PACA "applies to any commission merchant, dealer or broker in all transactions, not simply to the ones that have secured licenses," *A & J Produce Corp. v. Foodways, Inc.,* 88 Civ. 0754, 1988 WL 120159, at *1 (S.D.N.Y. Nov. 2, 1988), the court must determine whether Chang's conduct satisfies the statutory definition of a "dealer."

The term "dealer" "means any person *engaged in the business of buying or selling in wholesale or jobbing quantities,* as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce." 7 U.S.C. § 499a(b)(6) (emphasis added).[5] As such, pursuant to PACA, subject matter jurisdiction over A & J's claims against Chang is contingent upon whether Chang's activities satisfy the two prong definition of "dealer": (1) "engaged in the business of buying or selling," and (2) "in wholesale or jobbing quantities." 7 U.S.C. § 499a(b)(6); *see In re Magic Rest.,* 205 F.3d 108, 112—113 (3d Cir.2000).

### 1. Engaged in the Business of Buying or Selling

■ Pursuant to PACA, to be a "dealer," a "person" [6] must buy or sell perishable agricultural commodities. *See Royal Foods Co. v. RJR Holdings Inc.,* 252 F.3d 1102, 1107 (9th Cir.2001) (The " 'engaged in the business of language speaks to the type of business required to invoke jurisdiction under PACA' "). The statute also requires a person be "engaged in the business of buying or selling," which contemplates somewhat more than a single purchase or sale transaction. Indeed, dealers must buy and sell agricultural commodities as part of their profit-making business. *Id.* ("An entity is engaged 'in the business of' where that entity buys or sells to further its commercial enterprise.").

■ Here, Chang did not purchase produce from A & J. He acted solely as a

---

**4.** Neither the complaint nor the opposition papers allege that Chang is a commission merchant or a broker. Therefore, PACA applies to A & J's claims against Chang only if Chang is a dealer. *See Bandwagon Brokerage, Inc. v. Mafolie Foods Co.,* 168 F.Supp.2d 506, 510 (D.Virgin Islands 2001) (On a motion to dismiss for lack of PACA federal question subject matter jurisdiction, where plaintiff did not defend on the grounds that defendant was a commission merchant or a broker, the court only considered whether defendant was a dealer.)

**5.** There are three exceptions to the PACA definition of 'dealer':

(A) [N]o producer shall be considered as a "dealer" in respect to sales of any such commodity of his own raising; (B) no person buying any such commodity solely for sale at retail shall be considered as a "dealer" until the invoice cost of his purchases of

perishable agricultural commodities in any calendar year are in excess of $230,000; and (C) no person buying any commodity other than potatoes for canning and/or processing within the State where grown shall be considered a "dealer" whether or not the canned or processed product is to be shipped in interstate or foreign commerce, unless such product is frozen or packed in ice, or consists of cherries in brine, within the meaning of paragraph (4) of this section. Any person not considered as a "dealer" under clauses (A), (B), and (C) may elect to secure a license under the provisions of section 499c of this title, and in such case and while the license is in effect such person shall be considered as a "dealer."

7 U.S.C. § 499a(b)(6).

**6.** "The term 'person' includes individuals, partnerships, corporations, and associations." 7 U.S.C. § 499a(b)(1).

deliveryman and at no point did he own produce. (Chang Aff. at ¶ 19.) Chang was not engaged in the sale of PACA covered commodities. He did not charge the Retailers a different price than what appeared on the invoices he received from A & J. Chang served merely as a conduit between Retailers and A & J, he delivered produce to Retailers and delivered their payments back to A & J. (Chang Aff. at ¶ 19.) Chang's profits, if any, arose from the delivery service he provided and not from the purchase or sale of any PACA commodities.

As Chang was engaged in the business of delivering orders, not "the business of buying or selling," A & J's claims against Chang must be dismissed for lack of subject matter jurisdiction and Chang's motion for summary judgment is, therefore, GRANTED.

### 2. Wholesale or Jobbing Quantities

Assuming *arguendo* that Chang engaged in the "the business of buying or selling," PACA also requires a person to conduct their business in "wholesale or jobbing quantities." 7 U.S.C. § 499a(b)(6); *Bandwagon Brokerage, Inc. v. Mafolie Foods Co.*, 168 F.Supp.2d 506, 510 (D.Virgin Islands 2001) ("... the 'wholesale and jobbing quantities' requirement is a separate condition necessary to bring a transaction under PACA."). "Wholesale or jobbing quantities" are "aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received." 7 C.F.R. § 46.2(x)(2005); *In re Old Fashioned Enter., Inc.* 236 F.3d 422, 424 (8th Cir.2001) (same).

In *Bandwagon Brokerage*, for example, the defendant moved to dismiss plaintiff's PACA claim for lack of subject matter jurisdiction and argued that the defendant's conduct failed to satisfy PACA's definition of a "dealer." *Bandwagon Brokerage*, 168 F.Supp.2d 506. As is the case here, the plaintiff had the burden to demonstrate that the disputed transactions met the "wholesale or jobbing quantities" requirement even where the defendant had obtained a PACA license. *Id.* at 510. The court determined that while the defendant-buyer was engaged in the business of buying and selling perishable agricultural commodities, absent any evidence of "wholesale or jobbing quantities," defendant's actions did not qualify him as a "dealer." *Id.* As a result, the plaintiff failed to satisfy the "wholesale or jobbing quantities" requirement, there was no PACA trust and, consequently, the court lacked subject matter jurisdiction. *Id.*

▮ Here, as in *Bandwagon Brokerage*, the plaintiff failed to demonstrate that the transactions met the "wholesale or jobbing quantities" requirement. A & J failed to offer a scintilla of evidence that Chang handled "produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received." 7 C.F.R. § 46.2(x)(2005). Akin to *Bandwagon*, Chang is not a dealer. *See also Val–Land Farms, Inc. v. Third Nat'l Bank*, 937 F.2d 1110 (6th Cir.1991) (PACA claims dismissed because defendant was not a "dealer.")

Therefore, pursuant to 7 C.F.R. § 46.2(x)(2005), and since PACA only imposes liability upon commission merchants, dealers, and brokers, and since Chang is none of the above, this court lacks subject matter jurisdiction over A & J's claims against Chang. Accordingly, A & J's claims against Chang are dismissed for lack of subject matter jurisdiction and Chang's motion for summary judgment is GRANTED.

## B. *Notice*

Second, A & J was required to provide Retailers with sufficient notice of their intent to preserve their PACA trust rights. Under PACA, A & J was authorized to provide notice in one of two forms: (1) a written notice within thirty calendar days after payment was due, 7 U.S.C. § 499e(c)(3) ("the written notice method"), or (2) a printed statement on its regular invoices. 7 U.S.C. § 499e(c)(4) ("the invoice method").[7]

Proper notice under the "invoice method" consists of three independent requirements set forth in 7 U.S.C. § 499e(c)(4).[8] First, the bill or invoice statements must be "ordinary and usual," meaning "communications customarily used between parties to a transaction in perishable agricultural commodities in whatever form, documentary or electronic, for billing or invoicing purposes." 7 C.F.R. § 46.46(5)(2005). As part of the "ordinary and usual" requirement, "PACA clearly envisions that invoices presumptively indicate both the seller and the buyer for the purpose of preserving the seller's right to the trust assets received by the buyer." *Horizon Mktg. v. Kingdom Int'l Ltd.*, 244 F.Supp.2d 131, 141 (E.D.N.Y.2003). Second, the payment period must appear on the bill or invoice if it differs from the default payment period established by the regulations. *See* 7 U.S.C.A. § 499e(c)(4).[9] Third, sellers must print on the bill or invoice a statement of intent to preserve the trust, the precise language of which is provided in the statute. *See* 7 U.S.C. § 499e(c)(4); *Nobles–Collier, Inc. v. Hunts Point Tomato Co.*, No. 02 Civ. 5287, 2004 WL 102756 (S.D.N.Y. Jan. 22, 2004) (printed statement, "TERMS: PACA PROMPT", on invoices provided insufficient PACA notice as required by 7 U.S.C. § 499e(c)(4)).

■ Here, A & J relied exclusively on the invoice method of notice. (Am. Compl. at ¶ 1.) Two of the statutory requirements appear to be satisfied on the face of A & J's invoices. The payment time-period does not appear, but where the default

---

**7.** *See, e.g., Albee Tomato*, 282 F.Supp.2d at 10 (Notice to the Department of Agriculture and testimony of merchant's principal that he received notices from certain suppliers was insufficient to support the court finding that suppliers satisfied the notice requirement because principal was unable to confirm which suppliers sent notices or that such notices were timely). *See "R" Best Produce Inc. v. Eastside Food Plaza*, No. 02 Civ. 6925, 2003 WL 22231577, at *3 (S.D.N.Y. Sept. 30, 2003); *Fishgold v. OnBank & Trust Co.*, 43 F.Supp.2d 346, 350 (W.D.N.Y.1999). *See also* Andrew M. Campbell, *Statutory Trust Under Perishsable Agricultural Commodities Act*, 1995 WL 900323, 128 A.L.R. Fed. 303 at § 12(b) (2004).

**8.** *See In re Atlanta Egg*, at 750 (quoting 7 U.S.C.S. § 499e(c)(4))("(4) In addition to the method of preserving the benefits of the trust specified in paragraph (3), a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust." The bill or invoice must include the information required by the last sentence of paragraph (3) and contain on the face of the statement the following: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930" (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.)

**9.** The last sentence of 7 U.S.C. § 499e(c)(3) provides:

When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.

payment period established by the regulations applies, it is not required. *See In re Atlanta Egg & Produce, Inc.*, 321 B.R. 746, 750–51 (N.D.Ga.2005). In addition, all of the invoices submitted by A & J contained the required statutory statement of intent to preserve the trust on their face. (Tramutola Aff., Ex. A & B.)

While the invoice method was the designated means by which A & J provided Retailers with notice, the invoices submitted by A & J all read "Sold To: MC Park" or "Sold To: MC PM." Although it appears that A & J facially complied with the PACA invoice method (Tramutola Aff. at ¶ 9, Exhibits A & B), there is no evidence that the invoices were ever provided to Retailers. This omission is significant because the invoices lack any evidentiary link to any particular defendant. *See Horizon Mktg.*, 244 F.Supp.2d at 142 ("PACA clearly assigns a vital function to the invoice used by a seller precisely because the party named in such invoice (which serves to give notice), is the PACA trustee to whom notice must be given.").

Indeed, A & J was required to effectuate actual notice (i.e. delivery of the invoices) to the Defendant Retailers and admits:

> That no notice was ever given by plaintiff to defendants HWAN C. KIM s/h/a/ JONG KIM, KYOO JIN SOHN s/h/a KYU JIN SHON, NATURAL FARMS, INC. and UNION FAMILY FARMS, INC. s/h/a UNION FARM, INC. by any ordinary and usual billing or invoice statements by specific language informing said defendants of plaintiff's intention to preserve its rights to trust pro-

ceeds under P.L. 98–273 § 5 of PACA, 7 U.S.C. ¶ 499e(c)

(Cohen Aff., Ex. "5".) [10] For all intents and purposes, A & J admits that the invoices were not "ordinary and usual" because an "ordinary and usual" billing statement would include, at the very least, the name of the purchaser of PACA covered commodities. Without the name of the buyer, the invoices fail to fulfill the invoice method's intent; i.e. notice. Accordingly, A & J failed to provide notice to the defendants pursuant to the invoice method and, therefore, A & J failed to preserve their trust rights. *See C.H. Robinson*, 239 F.3d at 486 ("To preserve benefits under a PACA trust, the unpaid produce seller must deliver written notice to the buyer."); *see also Nobles–Collier, Inc. v. Hunts Point Tomato Co., Inc.*, No. 02 Civ. 4128, 2004 WL 102756 (S.D.N.Y. Jan. 22, 2004).

Therefore, as A & J failed to provide Retailers with sufficient notice, its claims against Retailers must be dismissed for lack of subject matter jurisdiction and Retailers motion for summary judgment is GRANTED.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' motion for summary judgment is hereby GRANTED. The Clerk of Court is Ordered to close all open motions and remove this case from my docket. **IT IS SO ORDERED.**

---

10. The Kim Defendants served upon A & J a Notice to Admit this statement. More than thirty days have expired since the service of the foregoing and A & J has not responded. Accordingly, said notice is deemed admitted for all purposes. *See* Fed.R.Civ.P. 36; *see also S.E.C. v. Batterman*, No. 00 Civ. 4835,

2002 WL 31190171, *5 (S.D.N.Y. Sept. 30, 2002) (admissions made pursuant to Rule 36 may be used to support a motion for summary judgment); *accord, Donovan v. Carls Drug Co., Inc.*, 703 F.2d 650, 651 (2d Cir. 1983).