

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-30-2006

# Pac Intl Marketing v. A&B Produce Inc

Precedential or Non-Precedential: Precedential

Docket No. 04-3399

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Pac Intl Marketing v. A&B Produce Inc" (2006). *2006 Decisions.* Paper 489.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/489

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-3399

———

PACIFIC INTERNATIONAL MARKETING, INC.;
WALDEN-SPARKMAN, INC.; J&R ORCHARDS;
DESERT FRESH, INC.; CENTRE MARAICHER
EUGENE GUINOS JR., INC.; BONIPAK PRODUCE CO.;
BLAZER-WILKINSON, LLC; AGRI-SALES, INC.;


FRANK SPINGOLA & SON LTD.; MARK MARTIN'S
J-MART EXPRESS, INC.; **BURCH EQUIP., LLC;
UNITED SAVINGS BANK; FRUTECH, INC.;
WILLIAM WALTERS; TANIMURA & ANTLE, INC.;
METZ FRESH, LLC; DOUD & ASSOCIATES, INC.;
BOSKOVICH FARMS, INC.; DENNIS B. JOHNSTON;
GERALD A. JOHNSTON; JOHNSTON FARMS;
WEST COAST DISTRIBUTING, INC.;
*EXEL TRANSPORTATION SERVICES, INC.;
BARTOLOTTA, INC.

(Intervenors in D.C.)

v.

A & B PRODUCE, INC.; ANTHONY G. BADOLATO,
an individual; TEAMSTERS HEALTH AND WELFARE
FUND OF PHILADELPHIA, TEAMSTERS PENSION TRUST
FUND OF PHILADELPHIA AND VICINITY

(Eastern District of PA Civil No. 03-3564)


FRANK SPINGOLA & SONS, LTD.

v.

A & B PRODUCE, INC.; ANTHONY BADOLATO;

(Eastern District of PA Civil No. 03-5556)

*Exel Transportation Services, Inc.,

Appellant

*(Amended in accordance with the Clerk's Order dated 9/3/04)

** (Dismissed per the Clerk's Order of 9/22/04)

―――

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. Nos. 03-3564 and 03-5556)
Honorable Louis H. Pollak, District Judge

―――

Argued June 7, 2006

BEFORE: AMBRO, FUENTES, and GREENBERG, Circuit Judges

(Filed:August 30, 2006)

―――

Meuers Law Firm
Lawrence H. Meuers (argued)
5395 Park Central Court
Naples, FL 34109

Whiteman, Bankes and Chebot
Jeffrey M. Chebot
Constitutional Place, Suite 1300
325 Chestnut St.
Philadelphia, PA 19106

   Attorneys for appellees

Paul D. Keenan
Charles L. Howard (argued)
Jonathan F. Ball
Janssen Keenan & Ciardi
2005 Market St., Suite 2050
Philadelphia, PA 19103

   Attorneys for appellant

2

GREENBERG, <u>Circuit</u> <u>Judge</u>.

## I. INTRODUCTION

This matter comes on before the court on an appeal by Exel Transportation Services, Inc. ("Exel") from the district court's order entered on July 21, 2004, denying Exel's claim for payment as administrative expenses from the statutory trust created by the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e(c), for its services in transporting produce for defendant A & B Produce, Inc. Exel, a logistics company, arranged and paid for the transportation of produce from sellers and suppliers to A & B Produce, Inc., but A & B Produce, Inc. did not pay Exel for its services. At around the same time, various unpaid sellers and suppliers of produce filed complaints against A & B Produce, Inc. seeking to recover benefits pursuant to PACA. Even though there were multiple sellers and suppliers of the produce, as a matter of convenience we hereinafter will refer to one of the plaintiffs, Pacific International Marketing, Inc. ("Pacific"), a seller and provider in the same position in this litigation as all of the plaintiffs, as if it had been the sole seller and provider and as the sole plaintiff. Exel intervened seeking to recover its unpaid transportation expenses from the PACA trust funds prior to their distribution to the trust beneficiaries. After the district court denied Exel's claim, Exel appealed, but we will affirm the district court's order.

## II. FACTS AND PROCEDURAL HISTORY

The parties do not dispute the relevant facts. A & B Produce, Inc., which now is defunct, formerly was engaged in the business of buying produce from various sellers and suppliers for ultimate resale. Pursuant to its contract with A & B Produce, Inc., Exel arranged and paid for the transportation of produce from sellers and suppliers of produce to A & B Produce, Inc. In doing so, Exel paid certain carriers to transport seven shipments of produce from various sellers and suppliers to, or for the benefit of, A & B Produce, Inc. Exel submitted

invoices to A & B Produce, Inc., which acknowledges that it received the shipments, for the freight charges in the sum of $39,200, but A & B Produce, Inc. did not pay Exel for its services.

On June 10, 2003, Pacific, a produce wholesaler, filed a complaint, later amended, in the district court against A & B Produce, Inc. and Anthony Badolato, its president (collectively "A & B Produce"), alleging that A & B Produce failed to pay for produce that it purchased from Pacific. Pacific claimed that it was the beneficiary of a statutory trust under PACA, 7 U.S.C. § 499e(c), from which it was entitled to recover payment for the produce.

On October 1, 2003, Pacific and A & B Produce entered into a stipulation and order, pursuant to which A & B Produce agreed to liquidate its assets subject to the PACA trust for the benefit of the potential PACA trust beneficiaries. On November 14, 2003, Exel filed a complaint in intervention in Pacific's action seeking to recover the cost of the transportation services that it provided to A & B Produce prior to the distribution of PACA trust funds to the PACA trust beneficiaries. Exel, however, did not claim to be a PACA trust beneficiary; rather, Exel sought payment for its transportation services as an administrative expense chargeable to the res of the PACA trust prior to any distribution of the PACA trust funds to the beneficiaries. Pacific opposed Exel's claim.

The district court denied Exel's claim for payment for its transportation services as administrative expenses of the PACA trust on the ground that allowing Exel payment "ahead of the PACA trust beneficiaries . . . would defeat the purpose of the PACA [trust] to place unpaid sellers in a priority position and expand the term 'administrative expense' too far." App. at 7. Exel then appealed.

III. JURISDICTION AND STANDARD OF REVIEW

The district court had subject matter jurisdiction over this case pursuant to 7 U.S.C. § 499e(c)(5). See Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc., 222 F.3d 132, 138 (3d Cir. 2000) ("[D]istrict courts clearly have jurisdiction over actions by private parties seeking to enforce payment from the [PACA] trust."). We have jurisdiction pursuant to 28 U.S.C. § 1291 as the district court certified the July 21, 2004 order as final under Fed. R. Civ. P. 54(b).

4

See Gerardi v. Pelullo, 16 F.3d 1363, 1368 (3d Cir. 1994). We review the district court's interpretation of PACA on a de novo basis. Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197, 202 (3d Cir. 1998).

## IV. DISCUSSION

### A. Background

We begin with an overview of PACA. In 1930, Congress enacted PACA to promote fair trading practices in the produce industry. See 7 U.S.C. §§ 499a-499s; Idahoan Fresh, 157 F.3d at 199. Specifically, "Congress intended PACA to protect small farmers and growers who were vulnerable to the practices of financially irresponsible buyers." Id. at 199 (footnote omitted). "Under PACA, it is unlawful for buyers of produce, inter alia, to fail to make prompt payment for a shipment of produce." Id. (citing 7 U.S.C. § 499b(4)). A buyer's failure to tender prompt payment triggers civil liability and the possible suspension or revocation of the buyer's PACA license that 7 U.S.C. § 499c requires. See 7 U.S.C. § 499h(a). The PACA regulations define the time for prompt payment, which applies unless the parties agree otherwise in writing to different payment provisions prior to the transaction. See 7 C.F.R. § 46.2(aa).

Congress later amended PACA to provide the additional remedy of a statutory trust provision for "suppliers, sellers, or agents" against buyers who fail to make prompt payment. 7 U.S.C. § 499e(c); see also P.L. 98-273; H.R. Rep. No. 98-543, at 2 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406. Congress provided this remedy because "[p]rior to this amendment, unpaid produce suppliers were unsecured creditors vulnerable to the buyers' practice of granting other creditors a security interest in their inventory and accounts receivable." Idahoan Fresh, 157 F.3d at 199. Under the PACA statutory trust provision, a buyer's produce, products derived from that produce, and the proceeds gained therefrom are held in a non-segregated, floating trust for the benefit of unpaid suppliers, sellers, and agents who meet the applicable statutory requirements to be granted the status of PACA trust fund beneficiaries. See 7 U.S.C. § 499e(c); 7 C.F.R. §§ 46.46(b), (c). Thus, the PACA statutory trust grants certain unpaid suppliers and sellers of produce and their agents an interest in the PACA trust assets superior to that of a buyer's perfected, secured

5

creditor.  Idahoan Fresh, 157 F.3d at 199.  The issue presented on this appeal is whether Exel, which does not claim to be a PACA beneficiary, is entitled to payment for its transportation services for the shipments of produce to A & B Produce as administrative expenses chargeable against the PACA trust prior to the distribution of PACA trust funds to the PACA trust beneficiaries.

B.  Common Law Trust Principles

Although PACA does not include a provision authorizing the payment of trust administrative expenses, several courts have relied on common law trust principles to allow for the payment of certain administrative expenses, such as attorneys' fees or fees for services rendered in collecting receivables for the benefit of the PACA trust, to be paid from the corpus of the PACA trust prior to its distribution to the statutory beneficiaries.  See, e.g., In re Milton Poulos, Inc., 947 F.2d 1351, 1353 (9th Cir. 1991); In re Southland + Keystone, 132 B.R. 632, 643 (B.A.P. 9th Cir. 1991); In re United Fruit & Produce Co., 119 B.R. 10, 13 (Bankr. D. Conn. 1990) ("[W]ell-settled trust law furnishes the basis for compensating a trustee, unless [PACA] otherwise provides.").  These cases generally require the claimant to demonstrate that its efforts and resultant expenses were "directly responsible for the availability of the funds from the [PACA] trust." See, e.g, Milton Poulos, 947 F.2d at 1353.  For example, in Milton Poulos the Court of Appeals for the Ninth Circuit awarded attorneys' fees to the attorneys for a produce supplier because, "[t]hrough their efforts, the bankruptcy court declared the trust valid and enforceable, thereby permitting the funds to be [disbursed] among the trust [beneficiaries.]"  Id. at 1353.  The court further explained that "the efforts of these attorneys resulted in a common fund for the group." Id.

Similarly, in United Fruit the bankruptcy court relied on common law trust principles as well as section 506(c) of the Bankruptcy Code, 11 U.S.C. § 506, in compensating a bankruptcy trustee for its "necessary" services from the PACA trust funds prior to their distribution.  119 B.R. at 13 & n.5.  The court explained that "[t]he bankruptcy trustee of the debtor's estate . . . rendered substantial services in collecting the PACA receivable for the benefit of the PACA beneficiaries and in contesting [a seller's] claim that it is entitled to a priority payment from [the PACA trust.]"  Id. at 13.  The court further explained that "[t]he non-PACA creditors should not pay for these services and the trustee should not be forced to donate

6

them." Id.  The court in Southland + Keystone, in harmony with the court in United Fruit, allowed the trustee "to offset [from PACA trust fund monies] its collection costs."  132 B.R. at 643.  The court, however, limited the amount of the offset "to the 'hard' costs of collection such as outside attorney's fees and expenses that were necessary to the collection effort," and stated that costs such as "overhead expenses are not recoverable."  Id.

Conversely, some courts have declined to allow the payment of attorneys' fees from the PACA trust funds.  For example, in C.H. Robinson Co. v. Alanco Corp., 239 F.3d 483, 485-88 (2d Cir. 2001), the Court of Appeals for the Second Circuit dealt with a case in which the attorney for the buyer of produce sought payment of attorneys' fees incurred in collecting the buyer's accounts receivable from which the produce seller recovered a portion of its unpaid receivables.  The court did not allow the payment of the attorneys' fees and in doing so rejected the argument that the fees should be allowed on the theory that the buyer's accounts constituted assets of the PACA trust.  See also Goldman-Hayden Co. v. Fresh Source Produce, Inc., 217 F.3d 348, 352-53 (5th Cir. 2000) (declining to award attorneys' fees to sellers because "[i]t does not appear that [the sellers] sued to create a PACA trust from which all potential PACA creditors could be compensated . . . [and] [b]ecause the litigation did not result in the establishment of a common fund" for the benefit of all unpaid PACA creditors).

Exel argues that it "has a valid claim for recovery of its freight charges as administrative expenses of the PACA trust because . . . A & B Produce incurred those freight charges in its role as the trustee of the PACA trust account."  Appellant's br. at 21.  Exel asserts that, "[w]ithout [its] services, there would be substantially less trust assets for distribution."  Id. at 20.  But even if we accept the factual basis for Exel's argument and adhere to the general view that a non-PACA creditor in some circumstances is entitled to payment of necessary and actual charges that it incurred for the benefit of the PACA trust beneficiaries, we are satisfied that the transportation costs that Exel seeks to recover do not constitute administrative expenses incurred for the benefit of the PACA trust beneficiaries.  Therefore, common law trust principles do not afford Exel the right to payment for its transportation services as administrative expenses of the PACA trust.[1]

---

[1]Exel argues, inter alia, that it is entitled to payment under common law trust principles because the PACA trust "attached to the

7

In particular, Exel did not provide the transportation services to A & B Produce to increase the value of the trust res for the benefit of the PACA trust beneficiaries. In other words, even though the transportation of the produce to A & B Produce ultimately generated a portion of the proceeds that came to constitute the res of the PACA trust, Exel's services were not "directly responsible for the availability of the funds," Milton Poulos, 947 F.2d at 1353, and its services certainly do not qualify as the "hard costs of collection." Southland + Keystone, 132 B.R. at 643 (internal quotation marks omitted). Exel performed these services for A & B Produce during the ordinary course of A & B Produce's business operations rather than to augment the corpus of the trust.

Obviously, when Exel arranged for the transportation of the produce to A & B Produce, Pacific and A & B Produce had not yet entered into the October 1, 2003 stipulation and order concerning the imposition and administration of the trust. Moreover, Exel provided for the transportation of the produce without any court order authorizing or directing it to do so; rather Exel acted in accordance with its contract with A & B Produce. Indeed, we cannot even conceive that if Exel had believed before it arranged for and paid for the transportation of the produce to A & B Produce or for its benefit that it would need to seek payment for its services as an administrative expense from a PACA trust, it would have accepted A & B Produce's business.

As Pacific correctly notes, if we accepted Exel's characterization of its transportation services as being "in furtherance of its administration of the trust," Appellant's br. at 21, "a multitude of general unsecured creditors [of the buyer of the produce] could step forward and assert 'administrative expense' claims for services performed in the course of produce transactions." Appellees' br. at 28. A partial list of these creditors would include "trucking companies which transport produce, utility companies, which ensure

---

produce at the time it was tendered to [the carrier] for carriage." Appellant's br. at 22. However, the existence of the trust is not dispositive inasmuch as we still must consider the central issue in deciding whether to apply common law trust principles, i.e., whether the efforts and expenses of an alleged PACA trustee, such as A & B Produce in employing Exel to transport the produce, were "directly responsible for the availability of the funds from the [PACA] trust." See Milton Poulos, 947 F.2d at 1353.

8

that produce companies have electrical power to refrigerate the produce, paper companies, which provide the paper on which invoices are printed and employees, who sold the [p]roduce and collected the proceeds." Appellee's br. at 28. Ultimately characterizing Exel's services as administrative expenses would enable all sorts of the buyer's unpaid creditors to assert priority administration expense claims ahead of the claims of the sellers and other entities that Congress intended to protect as beneficiaries of the PACA trust. The claims of such creditors, including Exel's, are simply too tangential to the claims that Congress intended PACA to protect to permit their payment as PACA administrative expenses.

We further emphasize that "[t]rusts created under PACA are statutory trusts, [to which] common law trust principles are not applicable if they conflict with the language of [PACA], the clear intent of Congress in enacting the statute, or the accompanying regulations." C.H. Robinson, 239 F.3d at 487. Indeed, "[t]he applicability of any principle of trust law to a PACA trust must be tested against the language and purpose of the statute and the accompanying regulations." Id. PACA expressly protects unpaid sellers, suppliers, and agents as trust beneficiaries, see 7 U.S.C. § 499e(c)(2), and "entitles the trust beneficiary to a sum certain." C.H. Robinson, 239 F.3d at 487. "PACA's purpose, as Congress has crystallized, is to ensure payment to the unpaid seller in the perishable agricultural commodities industry." Tanimura, 222 F.3d at 138. Accordingly, "[i]f PACA's trust is to have any meaning, and Congress's intent is to be effectuated in any way, trust assets must be preserved and not dissipated," id., and "PACA trust beneficiaries are entitled to full payment before trustees may lawfully use trust funds to pay other creditors." C.H. Robinson, 239 F.3d at 488.

Accordingly, we will not apply common law trust principles to allow Exel to recover charges that it characterizes as administrative expenses when doing so would conflict with the statutory language and Congress' intent to protect unpaid sellers and suppliers above non-PACA beneficiaries such as Exel. See C.H. Robinson, 239 F.3d at 486 ("[C]ases in which there was no clash between the language of PACA and common law trust principles do not undermine the most fundamental principle of statutory interpretation that the language of the statute must govern.").

C.  Statutory Basis

9

Exel also argues that "[a]llowance of payment [in this case] is consistent with the statutory and regulatory treatment of direct costs or expenses incurred by the buyer in connection with its purchases of produce impressed with the PACA trust." Appellant's reply br. at 6. We recognize that PACA does not limit the recovery of a seller, supplier, or agent to only the cost of the commodity itself. Indeed, Congress "chose to allow 'full payment of the sums owing in connection with [commodities] transactions,' [which] unambiguously encompasses not only the price of commodities but also related expenses." Country Best v. Christopher Ranch, LLC, 361 F.3d 629, 632 (11th Cir. 2004) (per curiam) (emphasis by court) (quoting 7 U.S.C. § 499e(c)(2)). Thus, a PACA beneficiary also may recover expenses and fees that are due contractually or otherwise "in connection with" the transaction that is the subject of the PACA trust claim. See Middle Mountain Land & Produce, Inc. v. Sound Commodities, Inc., 307 F.3d 1220, 1223 (9th Cir. 2002).

For example, in Middle Mountain, 307 F.3d at 1223, the Court of Appeals for the Ninth Circuit allowed a trust beneficiary to collect attorneys' fees and interest because the invoice for the produce created a contractual right to such fees, and thus the fees were "within the scope of the statute's protection of 'full payment owing in connection with the [PACA] transaction.'" (quoting 7 U.S.C. § 499e(c)(2)). The court explained that "[i]t is unlikely that Congress, in enacting a statute to provide better insolvency remedies to perishable agricultural commodities sellers, wanted selectively to exclude legitimate portions of a covered contract from the scope of a PACA claim." 307 F.3d at 1224 (emphases added). Similarly, courts have deemed certain "handling, pallet, and freight charges [as] a necessary part of the produce transaction and therefore . . . included within the phrase 'sums owing in connection with' the sale of fresh fruit and produce." Lincoln Diversified, Inc. v. Mangos Plus, Inc., No. 98 Civ. 5593 (RWS), 2000 U.S. Dist. LEXIS 9192, at *5 (S.D.N.Y. July 5, 2000) (quoting 7 U.S.C. § 499e(c)(2)); accord Fishgold v. OnBank & Trust Co., 43 F. Supp. 2d 346, 350 (W.D.N.Y. 1999) ("[H]andling fee . . . was included on an invoice for the shipment of produce, and appears to be related to the produce charges noted on the bill. As such, this charge is recoverable from the PACA trust."); Prestige Produce, Inc. v. Silver Creek, Inc., No. CV 04-491-S-EJL, 2006 U.S. Dist. LEXIS 13356, at *7 (D. Idaho Mar. 9, 2006).

In this case, however, there is no statutory basis for allowing Exel to recover the cost of its transportation services, either prior to or

as part of the distribution of PACA funds, because the transaction between A & B Produce and Exel for the transportation of produce was not made "in connection with" any other transaction between A & B Produce and Exel for the sale of produce. In this regard, we reject Exel's proposition that it is entitled to recovery of its transportation expenses because "[t]he amount claimable against the trust by a beneficiary or grower will be the net amount due after allowable deductions of <u>contemplated</u> <u>expenses</u> . . . made in connection with the transaction by the commission merchant, dealer, or broker." Appellant's br. at 25 (emphasis added by appellant) (quoting 7 C.F.R. § 46.46(e)(4)). In relying on the above cases to support its position, Exel overlooks their critical distinction from this case in that the claimants in those cases, unlike Exel, were sellers and suppliers who qualified as trust beneficiaries. <u>See, e.g.</u>, <u>Country Best</u>, 361 F.3d at 631 ("We must decide whether <u>sellers who are beneficiaries</u> of a trust established under [PACA] are entitled to attorney fees and costs as provided in their contracts.") (emphasis added). Thus, in each case a PACA beneficiary sought to recover administrative expenses such as attorneys' fees or freight charges in addition to its underlying claims for unpaid produce. <u>See, e.g.</u>, <u>id.</u>

Exel is not, and does not claim to be, a PACA trust beneficiary as a "supplier, seller, or agent," <u>see</u> 7 U.S.C. § 499e(c)(2), and Exel did not seek to recover administrative expenses in addition to unpaid charges for the produce itself. The transaction between A & B Produce and Exel for the transportation of produce was not made "in connection with" a commodities transaction, or, so far as we are aware, any other transaction, between A & B Produce and Exel, and the contract between Exel and A & B Produce is not otherwise "covered" by PACA. <u>See</u> <u>Middle Mountain</u>, 307 F.3d at 1224. In fact, the transportation services Exel supplied were not a "necessary part of the produce transaction" inasmuch as Exel and A & B Produce did not engage in a transaction for the sale and purchase of produce. <u>See</u> <u>Lincoln Diversified</u>, 2000 U.S. Dist. LEXIS 9192, at *5.

The facts are clear. Exel did not sell or supply produce to A & B Produce but instead merely was a third party to the underlying produce transactions between A & B Produce and Pacific. As we noted above, Congress intended to protect sellers and suppliers of produce, not third-party service providers whose services are ancillary to the sale of produce. Inasmuch as "[s]trict eligibility requirements accompany the extraordinary protection afforded by PACA's trust provision," <u>Am. Banana Co. v. Republic Nat'l Bank of N.Y.</u>, 362 F.3d

11

33, 42 (2d Cir. 2004), we cannot circumvent the provisions and intent of PACA by allowing Exel to recover its transportation expenses prior to the distribution of the trust funds to the qualified beneficiaries.[2]

## V.  CONCLUSION

For the foregoing reasons we will affirm the order of July 21, 2004, denying Exel's claim for its transportation services as administrative expenses against the PACA trust.

———

[2]According to Pacific, the PACA claims against A & B Produce far exceeded the available PACA trust funds, and "each PACA Trust Beneficiary recover[ed] only about 12% of the principal amount of its claim against A & B [Produce]."  Appellees' br. at 3.  Although these funds already have been distributed to the PACA beneficiaries, at oral argument counsel indicated that approximately $25,000 remains in an escrow account.  We believe that, perhaps subject to trust expenses, the remaining $25,000 will be distributed to the PACA trust beneficiaries to supplement the initial 12% distribution when we issue this opinion and accompanying judgment affirming the order denying Exel's claim. Therefore, any payment of fees to Exel would impair the ability of the PACA beneficiaries to recover the PACA trust funds and thus frustrate the purpose of PACA.  See C.H. Robinson, 239 F.3d at 488.